DECISION
{¶ 1} Relator, Erieview Metal Treating Co. ("Erieview"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate that portion of its order that allocates 100 percent of an award of permanent total disability ("PTD") compensation to Erieview in claim number OD198791 ("1986 claim"), and to enter an amended order that allocates 100 percent of the award to another employer in claim number 97-594482 ("1997 claim").
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny Erieview's request for a writ of mandamus. (Attached as Appendix A.) Erieview has filed objections to the magistrate's decision.
 {¶ 3} Erieview first objects to the magistrate's interpretation ofState ex rel. Hay v. Indus. Comm. (1990), 52 Ohio St.3d 99, as justification for the allocation of 100 percent of the PTD award to Erieview. The magistrate found that the decision in Hay suggests that a comparison of the compensation and benefits paid in the claims may be relevant evidence to consider in an allocation. In objecting to the magistrate's finding in this respect, Erieview points to the following excerpt from Hay, at 100:
We reject the suggestion that the prior thirty-five-percent permanent partial disability award in the 1971 claim is some evidence supporting the commission's allocation. As we have often stated, a permanent total disability is not measured numerically but is instead based on the claimant's ability to engage in sustained remunerative employment. * * *
 {¶ 4} Contrary to Erieview's claims, nothing in this passage from Hay
precludes the commission from considering and comparing the compensation and benefits history of the claims. On its face, the holding of the court in Hay only prohibits the commission from relying upon the percentage attributed to the prior permanent partial disability award to establish the allocation between claims, which the commission did not do in the current case.
 {¶ 5} Unlike the medical reports in Hay, in the present case, neither Drs. Harvey Popovich nor David Atwell explicitly attributed the disability to either claim exclusively, although the commission did use both doctors' medical reports to establish that the claimant could not perform sustained remunerative employment. Thus, the only evidence in the record upon which the commission could determine which claim rendered the claimant unable to engage in sustained remunerative employment was the temporary total disability ("TTD") compensation history of the two claims. Although the court in Hay did not specifically base its allocation on the compensation history of the two allowed claims, that it endeavored to mention that one claim generated no TTD compensation and the other claim generated $28,000 in TTD compensation is persuasive that such evidence is relevant to determining the allocation of PTD. We find that the TTD compensation history of the two claims in the present case constituted some evidence upon which to allocate the PTD award.
 {¶ 6} Erieview argues next that, pursuant to State ex rel. Swigart v.Chrysler Corp. (1988), 8 Ohio App.3d 84, 100 percent of the PTD award should be allocated to the 1997 claim, as it was the last injurious exposure suffered by claimant causing permanent injury. Erieview claims that the last employer that subjected a claimant to an injurious exposure bears the full costs of the claimed occupational disease even if prior employment and exposure may have contributed to the condition. However, our holding in Swigart was "[w]here an employee suffers permanent and total disability as the result of an industrial injury aggravating a preexisting condition for which an industrial claim has previously been allowed, in the absence of evidence limiting the amount of disabilityattributable to the second claim, the permanent and total disability should be allocated entirely to the second claim[.]" Id. at syllabus (Emphasis added.) In the present case, there is evidence limiting the amount of disability attributable to the second claim in the form of the TTD compensation history of the two claims. Therefore, we find Swigart
does not mandate that all of the PTD award be allocated to the later 1997 claim.
 {¶ 7} Erieview also asserts that the magistrate erred in finding that the medical reports of Drs. Popovich and Atwell constituted "some evidence" to support the allocation when the reports failed to mention or consider the 1997 claim. We disagree. Dr. Popovich cites the 1997 claim at the beginning of his report, summarizes the facts surrounding the claim in the body of his report, and cites it in his opinion. Although Dr. Atwell does not mention the 1997 claim specifically in his report, he does indicate that he accepts the "allowed conditions" in the claim. Notwithstanding, the commission's allocation was based upon the prior history of compensation paid in the two claims, and we have already found that the commission's reliance thereupon was proper. Therefore, this argument is without merit.
 {¶ 8} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of Erieview's objections, we overrule the objections and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and deny Erieview's request for a writ of mandamus.
Objections overruled; writ denied.
LAZARUS and FRENCH, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
[State ex rel.] Erieview Metal Treating Co.,:
 Relator, :
v. : No. 04AP-447
Industrial Commission of Ohio : (REGULAR CALENDAR)
and Michael T. Yakopovich, Sr., :
 Respondents. :

MAGISTRATE'S DECISION
Rendered on December 28, 2004.
Mansour, Gavin, Gerlack, Manos Co., L.P.A., John F. Burke, III, and AmyL. Phillips, for relator.
Jim Petro, Attorney General, and Shareff Rabaa, for respondent Industrial Commission of Ohio.
Charles J. Gallo, Co., L.P.A., and Charles J. Gallo, Jr.; Paul W.Flowers Co., L.P.A., and Paul W. Flowers, for respondent Michael T. Yakopovich, Sr.
 IN MANDAMUS {¶ 9} In this original action, relator, Erieview Metal Treating Co. ("Erieview"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate that portion of its order that allocates 100 percent of an award of permanent total disability ("PTD") compensation to relator in claim number OD198791, and to enter an amended order that allocates 100 percent of the award to another employer in claim number 97-594482.
Findings of Fact:
 {¶ 10} 1. Respondent Michael T. Yakopovich, Sr. ("claimant"), has five industrial claims, three of which are pertinent to this action. Two of the claims are against Erieview. Claim number OD198791 is allowed for: "occupational asthma" with an official diagnosis date of September 1, 1986. The other claim against relator is allowed for a low back injury that occurred September 3, 1986.
 {¶ 11} 2. Claimant's occupational asthma was caused by his exposure at Erieview to the chemicals and metals used in the metal plating industry. According to relator, claimant left Erieview in 1988 for other employment.
 {¶ 12} 3. The third industrial claim pertinent to this action is against Meijer, Inc. ("Meijer"). This claim is allowed for: "aggravation of pre-existing occupational asthma," and is assigned claim number 97-594482 ("Meijer claim").
 {¶ 13} 4. Claimant began his employment with Meijer in 1993 loading trucks on a loading dock. Claimant transferred to Meijer's bakery where he was exposed to flour dust that caused him shortness of breath, wheezing, and coughing, according to the report of Herbert A. Grodner, M.D. Claimant left his employment with Meijer in September 1996.
 {¶ 14} 5. In July 1999, a commission staff hearing officer ("SHO") awarded claimant temporary total disability ("TTD") compensation beginning September 23, 1997, in the Erieview claim allowed for occupational asthma. TTD compensation was terminated on August 20, 2002, on grounds that the occupational asthma had reached maximum medical improvement.
 {¶ 15} 6. On June 18, 2002, claimant was examined by David M. Atwell, M.D., on behalf of the Ohio Bureau of Workers' Compensation ("bureau"). Dr. Atwell examined for the bureau only with respect to the Erieview claim allowed for occupational asthma. Dr. Atwell reported:
History of Present Illness: He was diagnosed as having occupational asthma in 1986, secondary to chemical and paint fumes among other things at work in the plating industry. His job title was that of a plater. He was into the plating job 20 years out of 39 before he developed shortness of breath, coughing, wheezing which he noticed was worse at work and better on vacations and weekends. He has had relief with Advair and Proventil. Triggering factors include exertion, changes in weather, second-hand smoke and hair spray. He last worked in 1997.
* * *
Functional State: He lives with his wife in a trailer. He does not help with household chores and states that he cannot because of shortness of breath. He does drive a car. He does not mow the lawn or shovel snow because he says he gets short of breath. He states that he may be able to climb 10 steps if he holds onto the banister. He does not exercise. * * *
Work History: He worked from 1958 to 1997 or 39 years in the plating industry as a plater. He had chemical and paint exposures and other things and these caused him to have respiratory symptoms.
* * *
Laboratory Data: Pulmonary function studies from 1993 reportedly showed a normal FVC and FEV1 with a moderate reduction in FEF. An exercise study in 1993 was compatible with mild reduction of exercise tolerance, mainly from cardiac factors or deconditioning.
Summary and Impression: Mr. Yakopovich has reached maximum medical improvement, although he may get worse with time. He cannot return to his former position of employment as it will worsen his asthma. He could probably perform at least a desk job. Whether he could do more is uncertain, but this could be objectively documented by a cardiopulmonary stress test.
 {¶ 16} 7. On October 24, 2002, claimant filed an application for PTD compensation. On the application, claimant listed his claims with Erieview and Meijer.
 {¶ 17} 8. On May 7, 2003, claimant was examined on behalf of Erieview by Bruce J. Feldman, M.D. In his report, Dr. Feldman opined that claimant was not permanently and totally disabled as a result of his examination of claimant's lungs and lumbosacral spine. Dr. Feldman opined that the occupational asthma allowed in OD198791 caused a five percent permanent partial disability of the whole person. He further opined that claimant had no impairment related to the low back claim against Erieview.
 {¶ 18} 9. On May 10, 2003, claimant was examined on behalf of Meijer by Herbert A. Grodner, M.D. Dr. Grodner wrote:
History:
Mr. Yakopovich was initially granted an allowance for the condition of occupational asthma when he worked for Erieview Treating Company for approximately eight years in the 1980s. At that time, he was exposed to a number of chemicals and metals, which caused him to have wheezing and shortness of breath and perforation and irritation of the nasal septum and turbinates. He began working at Meijer in 1993 and 1994 initially working on the loading dock loading trucks and he then was transferred to the bakery.
Approximately six months to a year after he began working in the bakery, he was having problems with exposure to flour dust causing him to have wheezing, shortness of breath and cough. * * * * * *
Opinion:
[One] Considering the condition of occupational asthma, is Mr.Yakopovich capable of engaging in any sustained remunerative employment?
Yes. This man's occupational asthma appears to be under good control at this time. Spirometry reveals only mild obstructive airway disease. He is using a minimal amount of medication and, in addition, he tells me that his medication has not changed since his allowance for exacerbation of occupational asthma.
* * *
[Three] What percentage of Mr. Yakopovich's disability, if any, isattributable to the allowed condition sustained at Meijer, which isaggravation of pre-existing occupational asthma?
I don't believe that there is any percentage of disability that would be attributed to his exacerbation of underlying occupational asthma. He has returned to baseline. Spirometry today reveals relatively mild airway dysfunction. He is on a minimal amount of medication. He has not required systemic steroids recently and I believe that he has returned to baseline when comparing his condition and clinical findings today with those records that are in the file. Therefore, it is my opinion that, with respect to any disability that occurred as a result of his exposure, this has resolved and, at this time, all of his disability and impairment is a result of his initial allowance for occupational asthma when he worked in the plating industry.
(Emphasis sic.)
 {¶ 19} 10. On May 19, 2003, claimant was examined on the commission's behalf by Harvey A. Popovich, M.D. Dr. Popovich found that claimant has a "Class III respiratory impairment." He assigned a "50% whole person permanent partial impairment" for "[o]ccupational asthma: aggravation of pre-existing occupational asthma." Dr. Popovich also found that claimant has a "5% whole person permanent partial impairment" for the "low back" which combines with the respiratory impairment for a 53 percent whole person impairment.
 {¶ 20} 11. On a physical strength rating form, dated May 19, 2003, Dr. Popovich opined that the industrial injuries permit only sedentary employment.
 {¶ 21} 12. The commission requested an employability assessment report from Robert A. Mosley, a vocational expert. The Mosley report, dated July 11, 2003, evaluates the impact of the nonmedical factors on the medical restrictions associated with the various medical reports of record.
 {¶ 22} 13. Following a November 13, 2003 hearing, an SHO issued an order awarding PTD compensation beginning October 24, 2003. The order states reliance upon the medical reports of Drs. Popovich and Atwell and the employability assessment report of Mr. Mosley.
 {¶ 23} 14. The last paragraph of the SHO's order addresses the claim allocation issue:
It is further ordered that the above award be allocated as follows: 100% of the award is to be paid under Claim Number OD19871 [sic]. This Staff Hearing Officer finds that although the 1997 claim was an aggravation of the original claim, all disability compensation has been paid in the original occupational disease claim, based upon a previous finding by the Industrial Commission. Therefore, it is in fact the original occupational disease which renders the injured worker unable to perform sustained remunerative employment.
 {¶ 24} 15. In an amended order mailed December 27, 2003, the SHO awarded PTD compensation beginning October 24, 2002.
 {¶ 25} 16. On January 29, 2004, the commission denied relator's request for reconsideration.
 {¶ 26} 17. On April 26, 2004, relator, Erieview Metal Treating Co., filed this mandamus action.
Conclusions of Law:
 {¶ 27} The issue is whether the commission has articulated a valid basis supported by some evidence for allocating 100 percent of the PTD award to Erieview.
 {¶ 28} Finding that the commission has articulated a valid basis supported by some evidence for allocating 100 percent of the PTD award to Erieview, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 29} In State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.
(1994), 71 Ohio St.3d 139, the Supreme Court of Ohio applied the principles set forth in State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, to the commission's practice of allocating PTD awards involving multiple industrial claims. The Yellow Freight court explained:
* * * All matters affecting the rights and obligations of the claimant or employer merit an explanation sufficient to inform the parties and potentially a reviewing court of the basis for the commission's decision.
Id. at 142. (Emphasis sic.)
 {¶ 30} Clearly, the basis for the allocation must be consistent with the medical evidence relied upon in support of the award. State ex rel.Hay v. Indus. Comm. (1990), 52 Ohio St.3d 99.
 {¶ 31} In Hay, the commission divided a PTD award between two claims, assigning 35 percent to the 1971 claim, and 65 percent to the 1975 claim. The commission's PTD award was based upon the reports of Dr. Gary I. Katz and Dr. Stephen P. Combs. However, Drs. Katz and Combs attributed the claims disability exclusively to the 1975 claim. In mandamus, the commission argued that its 35 percent allocation to the 1971 claim was supported by a prior 35 percent permanent partial disability award in the 1971 claim. Rejecting the commission's argument, the Hay court explained that PTD is not measured numerically, but, instead, on the claimant's ability to engage in sustained remunerative employment. The Hay court ordered that the commission allocate the PTD award wholly to the 1975 claim, because the relied-upon medical evidence compelled that result.
 {¶ 32} Interestingly, in Hay, the court noted that the 1971 claim had generated $87 in paid medical expenses, no TTD compensation, and the 35 percent permanent partial disability award. The Hay court further noted that the 1975 claim had resulted in $54,000 in paid medical bills, $28,000 in TTD compensation, and a 22 percent permanent partial disability award. Thus, the decision at least suggests that a comparison of the compensation and benefits paid in the claims may be relevant evidence to consider in an allocation.
 {¶ 33} Here, the commission awarded PTD compensation based upon the medical reports of Drs. Popovich and Atwell. The commission did not choose to rely on the reports of Drs. Feldman or Grodner who had examined respectively on behalf of Erieview and Meijer.
 {¶ 34} Dr. Popovich found that claimant was 50 percent whole person impaired based upon "[o]ccupational asthma: aggravation of pre-existing occupational asthma." Dr. Popovich found that claimant had a "Class III respiratory impairment." Thus, Dr. Popovich viewed both industrial claims in a single fashion rendering no opinion as to the separate impact of the claims on the claimant's respiratory impairment. As previously noted, Dr. Atwell was not asked to examine for the Meijer claim.
 {¶ 35} Given that the commission fashioned its PTD award based in large part upon the report of commission specialist Dr. Popovich, the commission found it necessary to consider the compensation history of the Erieview and Meijer claims. As previously noted, the Hay case suggests that this consideration was appropriate.
 {¶ 36} The commission, through its SHO, found that all disability compensation has been paid in the Erieview claim. On that basis, the commission allocated 100 percent of the PTD award to Erieview.
 {¶ 37} Here, relator does not dispute the commission's finding that all disability compensation has been paid in the Erieview claim, but suggests that the commission erred by awarding TTD compensation in the Erieview claim for a period that post-dates claimant's exposure to flour dust at Meijer. In its brief, relator states: "Inexplicably, the period of temporary total disability due to the 1997 Occupational Disease claim was assessed to the 1986 Occupational Disease claim, for which Claimant had no lost time for eleven years." (Relator's brief, at 3.)
 {¶ 38} The validity of the commission's award of TTD compensation in the Erieview claim for the period post-dating the Meijer employment is not truly an issue before this court in this mandamus action. While it is conceivable that relator might have challenged the July 29, 1999 SHO's order in a mandamus action, relator has apparently not done so. Relator's suggestion here that this court set aside the TTD award is inappropriate. In this regard, the magistrate notes that it is conceivable that the commission could have allocated the TTD award between the two claims had relator so moved at the appropriate time. SeeState ex rel. Crocker v. Indus. Comm. (1983), 9 Ohio App.3d 159 (this court upheld the commission's allocation of a TTD award between two industrial claims).
 {¶ 39} Because the commission articulated a valid basis supported by some evidence for allocating 100 percent of the PTD award to Erieview, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 /s/ Kenneth W. Macke
 Kenneth W. Macke
 Magistrate