DECISION
 IN MANDAMUS ON OBJECTIONS TO MAGISTRATE'S DECISION {¶ 1} DaimlerChrysler Corporation ("DaimlerChrysler") filed this mandamus action seeking a writ to compel the Industrial Commission of Ohio ("commission") to vacate its *Page 2 
award of permanent total disability ("PTD") compensation to Gary M. Schutt and its allocation of that award among three separate claims.
 {¶ 2} In accord with the local rules, this case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then prepared and filed a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes a recommendation that we deny the requested writ of mandamus.
 {¶ 3} DaimlerChrysler has filed objections to the magistrate's decision. Counsel for the commission and counsel for Gary Schutt have each filed a memorandum in response. The case is now before the court for review.
 {¶ 4} The magistrate's decision in this case is 20 pages in length. The magistrate's decision contains a detailed analysis of the facts and an extended review of the pertinent case law from this court and from the Supreme Court of Ohio. Both the facts as presented and the law as reviewed are correct.
 {¶ 5} As a result, we adopt the findings of fact and conclusions of law in the magistrate's decision. We therefore refuse to issue the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
 SADLER, P.J., and BROWN, J., concur. *Page 3 
 (APPENDIX A)
MAGISTRATE'S DECISION Rendered on October 24, 2006
 MAGISTRATE'S DECISION IN MANDAMUS {¶ 6} Relator, DaimlerChrysler Corporation, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total *Page 4 
disability ("PTD") compensation to respondent Gary M. Schutt ("claimant") and ordering the commission to find that claimant is not entitled to that compensation.
Findings of Fact:
 {¶ 7} 1. Claimant has three workers' compensation claims which are the subject of this mandamus action. Only two of those claims involve relator herein. In claim number 75-3919 Champion Spark Plug Company, now known as Federal Mogule Ignition Company ("Federal"), was the employer and the claim has been allowed for the following conditions:
 Strain medial collateral ligament, right knee (BWC 3/20/75); degenerative osteoarthritis of the right knee (BWC 2/23/81); substantial aggravation of pre-existing degenerative disc disease (of the back, on a flow-through basis, due to altered gait) (DHO 11/4/88).
Claim number L42297-22 involves an injury which occurred in 1990 and the employer is relator herein. That claim is allowed for the following conditions:
 Contusion, left knee (employer certified 5/14/90) left knee strain; osteoarthritis, left knee (employer certified per letter dated 7/3/91).
Claim number 99-801014 involves injuries which occurred in 1999 and relator herein is the employer. That claim is allowed for the following conditions:
 Osteoarthritis, left knee; tear medial meniscus, left knee; deep vein thrombosis, left knee (employer certified per BWC note dated 3/1/01) right shoulder subacromial bursitis (DHO 12/4/01).
 {¶ 8} 2. In the present case, it is important to keep in mind that the 1975 claim involving Federal involves claimant's right knee and his back, while the 1990 and 1999 *Page 5 
claims where relator herein is the employer, involve claimant's left knee and right shoulder.
 {¶ 9} 3. Relative to the 1975 claim involving claimant's right knee and lower back, claimant has undergone two total knee replacement surgeries. The first occurred in 1987 and the second in 2002. Claimant's treatment for his lower back condition has been relatively conservative, involving steroid injections and medication. In July 1991, claimant was awarded a 46 percent permanent partial disability award relative to the 1975 claim.
 {¶ 10} 4. In his 1990 and 1999 claims, involving his left knee and right shoulder and where relator is the employer, claimant underwent arthroscopic surgery on his knee in 1985 prior to the date of injury, again in 1999 and had his left knee totally replaced in 2000. Treatment for claimant's right shoulder has been relatively conservative in nature.
 {¶ 11} 5. On March 11, 2003, claimant filed his application for PTD compensation.
 {¶ 12} 6. In support of his application for PTD compensation, claimant submitted the March 4, 2003 report of Michael K. Riethmiller, M.D. At the outset of that report, Dr. Riethmiller noted that claimant had originally injured his right knee playing football in high school. Claimant had surgery on his right knee for this football injury in 1970. Dr. Riethmiller noted that claimant stated that the 2002 total right knee replacement did not help him and that he has difficulty sitting and standing because of his right knee. Claimant also informed Dr. Riethmiller that he had steroid injections in his back. Relative to his left knee, claimant informed Dr. Riethmiller that the 2000 total left knee *Page 6 
replacement did not help him much either. Claimant also suffers from thrombosis of his left leg, which is an allowed condition in his claim, and he experiences more swelling of his left leg than his right. With regards to his right shoulder, claimant stated that he is not able to elevate his right hand above head or shoulder level. Thereafter, Dr. Riethmiller noted the following findings upon examination: both knees are considerably deformed and have visible evidence of bilateral thigh muscle atrophy; the right knee lacked 30 degrees of complete extension and had only an additional 52 degrees of flexion; the left knee lacked 40 degrees of complete extension and had only an additional 40 degrees of flexion; the left calf was more swollen than the right calf; claimant had decreased knee flexor and extensor muscle strength bilaterally; claimant's right shoulder had 20 degrees of external rotation and 90 degrees of both flexion and abduction; right shoulder impingement sign was negative, but claimant had crepitation with passive right shoulder motion; and claimant had tenderness over his lumbar region and could not stand completely erect. Thereafter, Dr. Riethmiller offered the following opinion:
 Based upon a review of the available medical records and this evaluation, it is my opinion that Mr. Schutt is permanently and totally disabled from engaging in any sustained remunerative employment as a result of the allowed conditions in these claims. This is due to the fact that the bilateral knee joint replacements have resulted in a marked limitation of knee joint motion bilaterally as well as in a loss of strength. He also has decreased motion of the lumbar spine and of the right shoulder. Due to these limitations, Mr. Schutt is unable to return to any of his former work duties and would be unable to return to limited duty work as well. This is due to the fact that he would be unable to get into a work area given his use of a quad cane at home. He has a marked limitation of bilateral knee joint motion which would prevent him from standing for any length of time or for walking any distance and also has *Page 7 
swelling of the left leg which prevents him from sitting for a prolonged period of time. He would need to keep the left leg elevated. He has decreased lumbar spine and right shoulder motion which would present further problems in performing even limited work duties. Therefore, it is my opinion that Mr. Schutt is permanently and totally disabled from performing any sustained remunerative employment and that similarly he would be unable to attend a rehabilitation program. If you have any questions concerning this evaluation, please feel free to contact me.
 {¶ 13} 7. Claimant was examined by Harvey A. Popovich, M.D., at the request of the commission. In his June 2, 2003 report, Dr. Popovich noted that claimant self reported the following: intermittent, sharp, low back pain which sometimes reaches an intensity level of seven on a scale from zero to ten; radiation of pain into the left leg and intermittent numbness and tingling of both legs; sharp pain on the anterior aspect of the right shoulder; pain in both knees (the right more than the left), reaching an intensity of seven or eight out of ten; and claimant estimated that he could sit for 15 minutes, stand for 30 minutes, and walk for 200 feet, but that he could not climb stairs. Thereafter, Dr. Popovich noted the following findings on examination. Right shoulder: no swelling, deformity, discoloration, or atrophy; tenderness on the anterior aspect of the right shoulder, including the bicep tendon as well as over the posterior aspects, with palpation; flexion 120 degrees, extension 40 degrees, abduction 110 degrees, adduction 40 degrees, both anterior and exterior rotation 70 degrees; strength was rated at 4/5 in all of the aforementioned movements; impingement sign is positive, but arm drop and cross over tests were negative; and slight crepitation but no evidence of joint instability. Lumbosacral: seated straight leg raising test was negative bilaterally for radicular pain; plantar responses were negative; no clonus at ankles; supine straight leg *Page 8 
raising is ten degrees bilaterally; Patrick's maneuver is positive bilaterally for low back pain; supine hip flexion is 40 degrees bilaterally; Romberg test is negative in the standing position; lumbosacral range of motion reveals flexion to ten degrees, extension to five degrees, and lateral flexion to 25 degrees bilaterally; and claimant is able to walk on his left heel and toes of his right foot in an isolated fashion but not on his right heel or toes of his left foot. Left knee: mild swelling and generalized tenderness with palpation including the anterior aspect, as well as the medial and lateral joint lines in the popliteal fossa; no popliteal masses and no crepitation; range of motion reveals flexion to 60 degrees and extension to minus 20 degrees; and discomfort with varus and valgus stressing, but no instability. Right knee: severe swelling with generalized tenderness of the right knee including the joint lines and the popliteal fossa with palpation; range of motion reveals flexion to 60 degrees and extension to minus 20 degrees; medial discomfort with varus stressing but no instability and no instability or discomfort with valgus stressing; and no crepitations. Dr. Popovich concluded that claimant had reached maximum medical improvement ("MMI") and assigned the following percentages of impairment: left knee and leg 30 percent; aggravation of preexisting degenerative disc disease five percent; right knee 30 percent impairment; and right shoulder five percent impairment. As such, Dr. Popovich attributed 35 percent impairment to the claim involving relator herein and 35 percent to Federal for a total combined impairment of 55 percent. Dr. Popovich also indicated that claimant was not capable of physical work activity.
 {¶ 14} 8. The commission granted relator's motion to depose Dr. Popovich on the grounds that Dr. Popovich may have considered nonallowed conditions. During the *Page 9 
course of the deposition, Dr. Popovich maintained that his opinions only dealt with the allowed conditions. Counsel for relator then asked Dr. Popovich questions regarding reports from other doctors in an effort to determine whether Dr. Popovich was really of the opinion that claimant could perform no work activity at all. Ultimately, Dr. Popovich stated that based upon his examination and all the records he reviewed that day, it was possible that claimant could perform sedentary work for four hours a day. When asked how short the day would have to be in order to make it a probability that claimant could work, Dr. Popovich stated that claimant could probably perform sedentary work for two hours per day.
 {¶ 15} 9. The record also contains the September 15, 2002 medical report of Steven N. Sokoloski, M.D., who opined that claimant's current physical condition was not causally related to his employment which he believed merely demonstrated progressive degenerative changes which would have happened anyway. Dr. Sokoloski opined that claimant was not permanently disabled as a result of any injuries he sustained at work.
 {¶ 16} 10. Claimant was also examined by James E. Brue, M.D., who issued a report dated June 20, 2003. After providing his physical findings upon examination and reviewing the medical records submitted to him, Dr. Brue concluded that claimant would be capable of performing at a sedentary work level.
 {¶ 17} 11. The progress notes of one of claimant's treating physicians are also in the record. Stephen Kiechel, M.D., noted that claimant had pain and problems in both knees. Between March 15, 2001 and April 29, 2002, some days the left knee was worse and other days the right knee was worse. Sometimes, the prescribed therapy *Page 10 
appears to have helped claimant gain better use of his knees and other times the therapy appears to have caused increased pain and discomfort.
 {¶ 18} 12. Claimant's motion for PTD compensation was heard before a staff hearing officer ("SHO") on December 11, 2003, and resulted in an order granting claimant's request based upon the reports of Drs. Riethmiller, Popovich and Kiechel. After summarizing the doctors' findings and discussing the deposition testimony of Dr. Popovich, the SHO concluded that, at best, claimant retained the ability to perform sedentary work for no more than two hours per day. Citing this court's decision in State ex rel. Cale v. Indus. Comm., Franklin App. No. 01AP-1143, 2002-Ohio-2924, the SHO concluded that the ability to perform sedentary work for no more than two hours per day does not constitute sustained remunerative employment adding that there were no jobs reasonably likely to accommodate claimant's necessary restriction of not sitting for a prolonged period of time, with the additional restriction of a need to keep his left leg elevated. Thereafter, the SHO allocated the PTD award as follows with the following reasoning given:
 It is further ordered that the above award be allocated as follows:
 46% of the award is to be paid under Claim Number 75-3919, 20% of the award is to be paid under Claim Number L42297-22, 34% of the award is to be paid under Claim Number 99-801014.
 Said apportionment is based upon the prior determinations of the injured worker's Percentage of Permanent Partial Disability under claim number 75-3919 (46%) and claim number L42297-22 (20%), which total 66%, and assigning the remaining 34% to claim number 99-801014. The apportionment also assigns the greatest weight of disability *Page 11 
compensation to the two claims which required the injured worker to undergo total knee replacements. The total knee replacements together created the vast majority of the injured worker's disability. Thus, it is reasonable to assign 80% (46% in claim number 75-3919 and 34% in claim number L42297-22) of the total Permanent and Total Disability award to the two claims which required him to undergo the surgeries for total knee replacements. Furthermore, the injured worker had to undergo two (2) total knee replacements in claim number 75-3919. Therefore, it is also equitable to assign a greater degree of disability (46% compared to 34%) to the claim which required two (2) total knee replacements.
(Emphasis sic.) (The commission's order can be found at pages 196 through 201 for the court's review.)
 {¶ 19} 13. Relator's request for reconsideration was denied by order of the commission mailed March 4, 2004.
 {¶ 20} 14. Thereafter, relator filed the instant mandamus action in this court. Conclusions of Law:
 {¶ 21} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be *Page 12 
given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 22} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 23} Relator raises four arguments in this mandamus action. First, relator contends that the commission abused its discretion in finding that claimant's ability to perform sedentary work for two hours per day was not part-time work as defined by the Supreme Court of Ohio inState ex rel. Toth v. Indus. Comm. (1997), 80 Ohio St.3d 360. Second, relator contends that Dr. Riethmiller's report does not constitute some evidence upon which the commission could rely as he spoke in terms of "disability" instead of "impairment." Third, relator contends that the report of Dr. Popovich does not constitute some evidence upon which the commission could rely because Dr. Popovich's deposition testimony repudiated his finding that claimant could not perform any physical work activity. Fourth, relator contends the commission abused its discretion by allocating the PTD award based upon the prior permanent partial disability ("PPD") *Page 13 
awards which had been paid in claimant's claims. For the reasons that follow, the magistrate finds that relator is not entitled to a writ of mandamus.
 {¶ 24} In its first argument, relator contends that claimant's ability to perform sedentary work for no more than two hours per day constitutes part-time employment as defined by the Supreme Court of Ohio inToth. Therefore, relator contends that the commission abused its discretion in granting PTD compensation to claimant without considering the nonmedical disability factors. Furthermore, relator contends that this court's decisions in Cale and State ex rel. Elastomers v.Torok, Franklin App. No. 02AP-116, 2002-Ohio-4770, are inconsistent with the Toth decision.
 {¶ 25} In Toth, the claimant had been denied PTD compensation based upon the reports of Drs. McCloud, Fierra and Martin. Dr. McCloud assessed a 40 percent orthopedic impairment and concluded that claimant could perform some sustained remunerative employment with restrictions that he avoid repetitive bending and lifting in excess of 20 pounds. Dr. Martin assessed a 50 percent permanent partial impairment and concluded that claimant would be capable of performing light part-time employment. Dr. Fierra assessed a combined-effects rating of 70 percent permanent partial impairment and found that claimant was clearly able to perform sustained remunerative employment. This court's denial of claimant's request for a writ of mandamus was affirmed on appeal. One of claimant's arguments was that part-time employment does not constitute sustained remunerative employment. The Supreme Court of Ohio disagreed and found that part-time work constitutes sustained remunerative employment. *Page 14 
 {¶ 26} The two cases relied upon by the court were cases involving a claimant's average weekly wage ("AWW"). In State ex rel. Wireman v.Indus. Comm. (1990), 49 Ohio St.3d 286, the claimant had argued that the commission should have applied the special circumstances provision of R.C. 4123.61 because she had not worked 40 hours per week in all of the weeks preceding her injury. The court disagreed with claimant's interpretation because it would define a period of "unemployment," as to all claimants, within the context of a 40-hour week. The court reasoned that, in many cases, a worker defines their own full-time work week at less than 40 hours and that to consider a claimant "unemployed" for the hours that they chose not to work and omit that time from the AWW calculation would provide a windfall to the claimant. As such, the court ultimately indicated that, in some circumstances, part-time employment may constitute a special circumstance. However, the court held that part-time employment is not, per se, a special circumstance.
 {¶ 27} The court also cited State ex rel. Pepsi-Cola Bottling Co. v.Morse (1995), 72 Ohio St.3d 210, wherein the employer had argued that the claimant had deliberately received under-inflated wages and had voluntarily kept his wages low. The court concluded that the employer's better argument when a person takes lower-paying alternative employment would be the reason for taking the job. The court stated that this is particularly relevant where the alternate employment is a part-time job and noted that wage loss compensation was not intended to provide a disincentive to the resumption of full-time employment or to subsidize a part-time lifestyle. Neither one of those cases cited in Toth is directly on point since they did not address the issue within the context of PTD compensation and the Supreme Court of Ohio did not elaborate. *Page 15 
 {¶ 28} This court has examined the issue of a claimant's ability to perform part-time employment and its relationship to whether or not the claimant is entitled to PTD compensation. In Cale, this court adopted the decision of its magistrate and held that where a claimant's abilities to sit, stand, and walk can be combined to provide a work day of five or six hours, the claimant may be found to be medically capable of sustained remunerative employment and therefore not entitled to an award of PTD compensation. However, this court noted that the commission may find a claimant medically unable to perform sustained remunerative work where there are no jobs reasonably likely to accommodate the claimant's combination of medical restrictions and/or where the claimant can work less than four hours per day.
 {¶ 29} The Cale court, at ¶ 25-27, addressed that issue as follows:
 Although the Supreme Court has not defined the term "part-time work" in Toth, the courts have provided guidance in unreported opinions. In State ex rel. DeSalvo v. May Co. (June 29, 1999), Franklin App. No. 98AP-986, unreported (Memorandum Decision), affirmed (2000), 88 Ohio St.3d 231, * * * the court in essence concluded that, where a claimant is capable of working more than four hours per day by combining his abilities to sit, stand and walk, the commission may find the worker capable of sustained remunerative employment.
 On the other hand, functional abilities may be so limited that only brief periods of work activities would be possible, which would not constitute sustained remunerative employment. See State ex rel. Libecap v. Indus. Comm. (Sept. 5, 1996), Franklin App. [No.] 96AP-29, affirmed (1998), 83 Ohio St.3d 178[.] * * * In Libecap, the commission found the claimant medically capable of sustained remunerative employment at the sedentary level, relying on a medical opinion stating inter alia that claimant could sit for no more than thirty minutes at a time. In mandamus, the court of appeals found that the commission abused its discretion in determining that claimant had the medical capacity to perform sedentary work because *Page 16 
sedentary work requires sitting most of the time, whereas the commission relied on a medical report finding claimant incapable of sitting more than thirty minutes at one time. Therefore, regardless of the fact that the physician placed claimant generally in the "sedentary" category, the specific limitations imposed were so restrictive as to preclude sustained remunerative employment.
 From decisions such as Toth, DeSalvo, and Libecap, the magistrate extracts general guidelines. It appears that the commission may find a claimant medically unable to perform sustained remunerative work where there are no jobs reasonably likely to accommodate his combination of medical restrictions, and/or where the claimant can work less than four hours per day. However, where the capacities to sit, stand and walk can be combined to provide, for example, a workday of five or six hours, the claimant may be found to be medically capable of sustained remunerative employment.
 {¶ 30} This court reached the same decision in the Elastomers case and more recently in State ex rel. Moyer v. Sharonville Fire Dept., Franklin App. No. 04AP-92, 2005-Ohio-587.
 {¶ 31} Relator contends that this court's decisions are in conflict with the decision in Toth. However, the magistrate points out that inState ex rel. DeSalvo v. May Co. (2000), 88 Ohio St.3d 231, andState ex rel. Libecap v. Indus Comm. (1998), 83 Ohio St.3d 178, the Supreme Court of Ohio affirmed this court's decisions. InDeSalvo, this court indicated that where a claimant is capable of working more than four hours per day by combining his abilities to sit, stand and walk, the commission may find the worker capable of sustained remunerative employment. In Libecap, the commission found the claimant medically capable of sustained remunerative employment at the sedentary level, relying on a medical opinion stating that claimant could sit for no more than 30 minutes at a time. In mandamus, this court found that the commission abused *Page 17 
its discretion in determining that claimant had the medical capacity to perform sedentary work because such work requires sitting most of the time. Although the doctor had indicated that claimant could perform sedentary work, this court found that the specific restrictions were so narrow as to preclude sustained remunerative employment.
 {¶ 32} The question is whether or not the claimant can perform somesustained remunerative employment. It is not an abuse of discretion for the commission to determine that a claimant who can only work for two hours per day is not able of performing sustained remunerative employment. The magistrate finds that it is not inconsistent to find a claimant who can perform work for four hours a day able to perform sustained remunerative employment while, at the same time, finding that a claimant who can perform no more than two hours a day not capable of performing sustained remunerative employment. As such, the magistrate rejects this argument of relator.
 {¶ 33} Relator also contends that the report of Dr. Riethmiller cannot constitute some evidence upon which the commission could rely because Dr. Riethmiller spoke in terms of disability instead of impairment. For the following reasons, this magistrate disagrees with relator's assertion.
 {¶ 34} It is undisputed that, for the purpose of a PPD determination, examining physicians should confine their opinions to the question of medical impairment (i.e., the amount of a claimant's anatomical and/or mental loss of function caused by the allowed conditions), and that the question of disability (i.e., the effect that the physical impairment has on the claimant's ability to work) is for the commission to determine. See State ex rel. Woods v. Indus. Comm. (1990),50 Ohio St.3d 227, and State ex rel. *Page 18 Lopez v. Indus. Comm. (1994), 69 Ohio St.3d 445. In the Lopez case, Dr. Seltzer's report was found to be severely flawed for a number of reasons including that his opinion improperly strayed beyond the bounds of impairment into that of disability. Dr. Seltzer's conclusion was expressly based, in part, on claimant's additional history which consisted of Dr. Seltzer's discussion of claimant's nonmedical disability factors. The court concluded that Dr. Seltzer's narrative lacked an opinion as to the amount of physical impairment alone which is attributable to the claimant's allowed conditions.
 {¶ 35} Upon examination of Dr. Riethmiller's report, the magistrate notes that Dr. Riethmiller did provide an extensive history of claimant's injuries and the treatment which he had undergone. Thereafter, Dr. Riethmiller noted his findings on physical examination. In his conclusion, Dr. Riethmiller specifically stated as follows:
 Based upon a review of the available medical records and this evaluation, it is my opinion that Mr. Schutt is permanently and totally disabled from engaging in any sustained remunerative employment as a result of the allowed conditions in these claims. * * *
 {¶ 36} Thereafter, Dr. Riethmiller specifically noted that claimant's inability to return to work was due to the fact that his bilateral knee joint replacements had resulted in a marked limitation of knee joint motion bilaterally as well as a loss of strength. Claimant's use of a quad cane as well as his limitation of bilateral knee joint motion would prevent him from standing for any length of time or for walking any distance. Furthermore, Dr. Riethmiller noted that claimant needed to keep his left leg elevated. Further, he noted that claimant's decreased motion of his lumbar spine and right shoulder motion would present further problems in performing even limited work duties. Clearly, Dr. Riethmiller's conclusion was based upon his impairment due to the allowed *Page 19 
conditions and the fact that Dr. Riethmiller used the word "disability" instead of the word "impairment" does not render his report defective. Unlike the report of Dr. Lopez, Dr. Riethmiller's opinion was not based upon any nonmedical factors. As such, the magistrate rejects this argument of relator was well.
 {¶ 37} Relator next argues that the commission abused its discretion by relying upon the report of Dr. Popovich because, according to relator, Dr. Popovich repudiated his opinion that claimant was incapable of performing some sustained remunerative employment when, in his deposition testimony, Dr. Popovich stated that claimant could probably perform sedentary work for no more than two hours per day. For the following reasons, this magistrate disagrees with relator's assertion.
 {¶ 38} It is undisputed that equivocal medical opinions do not constitute evidence upon which the commission can rely. It is further undisputed that, where a doctor repudiates his former opinion, that report likewise does not constitute some evidence upon which the commission can rely. However, the magistrate disagrees with relator's characterization of Dr. Popovich's deposition testimony as repudiating his report.
 {¶ 39} In State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649, 657, the Supreme Court of Ohio summarized the distinction between the ambiguous, equiovical and repudiated reports as follows:
 * * * [E]quivocal medical opinions are not evidence. See, also, State ex rel. Woodard v. Frigidaire Div., Gen. Motors Corp. (1985), 18 Ohio St.3d 110, 113[.] * * * Such opinions are of no probative value. Further, equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Ambiguous statements, however, are considered equivocal only while they are unclarified. [State ex rel. Paragon v. Indus. Comm. (1983), 5 Ohio St.3d 72.] Thus, once clarified, such *Page 20 
statements fall outside the boundaries of [State ex rel. Jennings v. Indus. Comm. (1982), 1 Ohio St.3d 101], and its progeny.
 Moreover, ambiguous statements are inherently different from those that are repudiated, contradictory or uncertain. Repudiated, contradictory or uncertain statements reveal that the doctor is not sure what he means and, therefore, they are inherently unreliable. Such statements relate to the doctor's position on a critical issue. Ambiguous statements, however, merely reveal that the doctor did not effectively convey what he meant and, therefore, they are not inherently unreliable. Such statements do not relate to the doctor's position, but to his communication skills. If we were to hold that clarified statements, because previously ambiguous, are subject to Jennings or to commission rejection, we would effectively allow the commission to put words into a doctor's mouth or, worse, discount a truly probative opinion. Under such a view, any doctor's opinion could be disregarded merely because he failed on a single occasion to employ precise terminology. In a word, once an ambiguity, always an ambiguity. This court cannot countenance such an exclusion of probative evidence.
 {¶ 40} Sedentary work is defined in Ohio Adm. Code 4121-3-34(B)(2)(a) as follows:
 "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 {¶ 41} As indicated above, the definition of occasionally contemplates one-third of the time. In his deposition testimony, Dr. Popovich specifically opined that claimant would be unable to perform sedentary work for up to one-third of an eight hour day. Thereafter, when asked whether or not he believed that claimant could perform *Page 21 
sedentary work for up to one-third of a four hour day, Dr. Popovich ultimately concluded that claimant could probably perform sedentary work for no more than two hours a day.
 {¶ 42} Relator appears to be arguing that the term "occasionally" can mean either one-third of an eight hour day or one-third of a four hour day. However, relator does not cite any authority for this contention. If relator's argument was accepted, then any claimant who could perform at a sedentary level for one hour and 20 minutes a day could be found capable of performing some sustained remunerative employment and therefore not permanently and totally disabled. The magistrate finds that relator's argument simply is not supported by any case law.
 {¶ 43} Because the magistrate finds that Dr. Popovich did not repudiate his earlier opinion and because the magistrate finds that the ability to perform some sedentary work for no more than two hours a day does not constitute sustained remunerative employment, the magistrate finds that relator's argument fails.
 {¶ 44} In its final argument, relator contends that the commission abused its discretion by allocating the PTD award based solely upon the prior awards of PPD awarded to claimant.
 {¶ 45} This court has considered the commission's use of percentages of PPD awarded to a claimant being used to allocate a PTD award. InState ex rel. S.E. Johnson Companies, Inc. v. Indus. Comm., Franklin App. No. 04AP-634, 2005-Ohio-1536, the employer had argued that the five percent PPD award, standing alone, did not constitute some evidence upon which the commission could rely in allocating a five percent PTD award to the claimant because a PPD award is not premised upon an *Page 22 
impairment of earning capacity or an impairment of present and future employment. Rather, a PPD award is a damage award made as a result of a work-related injury.
 {¶ 46} This court agreed and stated as follows:
 * * * [T]he PPD award, * * * standing alone, is not some evidence supporting the conclusion that this injury contributed to the claimant's inability to perform sustained remunerative employment. Moreover, Ohio Adm. Code 4121-3-34(D)(3)(f) states:
 The adjudicator [of PTD] shall not consider the injured worker's percentage of permanent partial impairment as the sole basis for adjudicating an application for permanent and total disability.
Id. at ¶ 4. Again, in [State ex. rel.] Erieview Metal Treating Co. v.Indus. Comm., Franklin App. No. 04AP-447, 2005-Ohio-1154, this court concluded that it did not constitute an abuse of discretion for the commission to consider the temporary total disability compensation history of multiple claims as some evidence upon which to allocate a PTD award.
 {¶ 47} In the present case, the magistrate finds that the commission did not rely exclusively upon the prior awards of PPD compensation paid in this case when it allocated the PTD award between the two employers. Instead, the percentage of PPD awarded was only one factor considered by the commission. The commission also stated that it was apportioning the greatest weight of disability compensation to the two claims which required claimant to undergo total knee replacement as they together created the majority of claimant's disability. Further, the commission noted that claimant had undergone total knee replacements in the 1975 claim and, therefore, the commission determined that the greater degree of disability should be apportioned to *Page 23 
that claim. As such, contrary to relator's assertions, the commission did rely upon other evidence when it determined the allocation of the PTD award. Furthermore, based upon a review of the reports of Drs. Riethmiller and Popovich, it appears that claimant's left knee, leg, and right shoulder problems impair his ability to work every bit as much as his right knee and back conditions. As such, the medical evidence upon which the commission relied indicates that the claims involving relator as the employer as well as the claims involving Federal as the employer both significantly impair claimant from working. As such, the magistrate finds that the commission did not abuse its discretion in the manner in which it allocated the PTD award.
 {¶ 48} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in awarding claimant PTD compensation and in allocating that award in the manner in which the commission did. As such, the magistrate finds that relator's request for a writ of mandamus should be denied.
/s/Stephanie Bisca Brooks
 STEPHANIE BISCA BROOKS MAGISTRATE *Page 1