[Cite as *State ex rel. Sheller-Chiles v. Indus. Comm.*, 2014-Ohio-313.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State ex rel.] Corinne Sheller-Chiles, | : | |
| Relator, | : | |
| | : | No. 13AP-245 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio and Ravenna Aluminum, Inc., | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on January 30, 2014

*Urban Co., L.P.A.,* and *Anthony P. Christine*, for relator.

*Michael DeWine*, Attorney General, and *Brian J. Becker,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1} Relator, Corinne Sheller-Chiles ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied permanent total disability ("PTD") compensation and to enter an order granting said compensation.

{¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended

that this court grant claimant's request for a writ of mandamus. The commission has filed an objection to the magistrate's decision.

{¶ 3}    In its sole objection, the commission argues that the magistrate erred when he concluded that Dr. David Chiarella's reports do not support the commission's finding that claimant has the ability to perform part-time work that constitutes sustained remunerative employment. The commission asserts that the magistrate has created a new rule that an expert who opines that a claimant can perform part-time work must indicate specifically how many hours an injured worker is capable of working. The commission argues that it is sufficient that the psychological expert opined that claimant was capable of light part-time employment.

{¶ 4}    The commission refutes the magistrate's reliance upon *State ex rel. Cale v. Indus. Comm.*, 10th Dist. No. 01AP-1143, 2002-Ohio-2924, for the proposition that Dr. Chiarella was required to opine the number of hours per week of part-time work he believed claimant could work due to her psychological conditions. The commission attempts to distinguish *Cale* by pointing out that the expert in *Cale* did not state that the claimant was capable of sustained remunerative employment on a part-time basis. Instead, the commission asserts, the issue in *Cale* was whether the commission could conclude that the claimant was medically capable of sustained remunerative employment on a part-time basis based upon the expert's restrictions that the claimant could sit for up to three hours and stand or walk for up to three hours.

{¶ 5}    We concur with the magistrate's decision. As in *Cale*, Dr. Chiarella did not state here that claimant was capable of sustained remunerative employment on a part-time basis. However, unlike the doctor in *Cale*, Dr. Chiarella did not indicate any specific restrictions; for example, definite time restrictions on standing, sitting or walking. Instead, Dr. Chiarella indicated only that claimant was "capable of work with various limitations and modifications[,]" "capable of limited and part-time employment activities[,]" and "would require breaks from the work activity on a frequent basis." These descriptions are not necessarily equivalent to claimant being capable of "sustained" remunerative employment. Dr. Chiarella's report did not provide any detailed figures or descriptions from which the commission or this court could extrapolate how many hours claimant could work. Thus, there is nothing in Dr. Chiarella's statements provided in his

report that gives the court any confidence that he was concluding claimant could work four or more hours per day, which prior case law from this court establishes is the standard for determining whether part-time work capacity constitutes "sustained" remunerative employment. *See, e.g., State ex rel. Franklin Cty. Bd. of Commrs. v. Indus. Comm.*, 10th Dist. No. 09AP-379, 2010-Ohio-2728, ¶ 62; *State ex rel. DaimlerChrysler Corp. v. Indus. Comm.*, 10th Dist. No. 06AP-387, 2007-Ohio-1498, ¶ 38, *State ex rel. Moyer v. Sharonville Fire Dept.*, 10th Dist. No. 04AP-92, 2005-Ohio-587, ¶ 12; *State ex rel. Clevite Elastomers v. Torok*, 10th Dist. No. 02AP-116, 2002-Ohio-4770, ¶ 19; *State ex rel. DeSalvo v. May Co.*, 10th Dist. No. 98AP-986 (June 29, 1999) (memorandum decision); *Cale*. Furthermore, we note that the Supreme Court of Ohio affirmed this court's decision in *DeSalvo* regarding the four-hour threshold in *State ex rel. DeSalvo v. May Co.*, 88 Ohio St.3d 231 (2000). *See DaimlerChrysler Corp.* at ¶ 31 (pointing out that the Supreme Court affirmed this court's decision in *DeSalvo*). For these reasons, we find Dr. Chiarella's report could not constitute some evidence to support the commission's determination that claimant could participate in part-time sustained remunerative employment, and we overrule the commission's objection.

{¶ 6}   After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of the commission's objection, we overrule the objection and adopt the magistrate's findings of fact and conclusions of law. Claimant's writ of mandamus is granted.

*Objection overruled; writ of mandamus granted.*

TYACK and KLATT, JJ, concur.

––––––––––––––––––––––

[Cite as *State ex rel. Sheller-Chiles v. Indus. Comm.*, 2014-Ohio-313.]

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State ex rel.] Corinne Sheller-Chiles, | : | |
| Relator, | : | |
| | | No. 13AP-245 |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Industrial Commission of Ohio and Ravenna Aluminum, Inc., | : | |
| | : | |
| Respondents. | : | |
| | : | |

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on October 30, 2013

---

*Urban Co., L.P.A.,* and *Anthony P. Christine*, for relator.

*Michael DeWine*, Attorney General, and *Brian J. Becker,* for respondent Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 7} In this original action, relator, Corinne Sheller-Chiles, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order awarding the compensation.

Findings of Fact:

{¶ 8}  1.  On April 19, 1996, relator injured her shoulders while employed as an inspector for respondent Ravenna Aluminum, Inc., a state-fund employer.

{¶ 9}  2.  The industrial claim is allowed for:

> Sprain rotator cuff, right; tear right rotator cuff; impingement syndrome, right; deltoid detachment, right; aggravation of acromioclavicular joint degenerative joint disease; adjustment disorder with anxiety depressed mood; and chronic pain disorder; left rotator cuff tear.

{¶ 10}  3.  On August 3, 2012, attending physician Hyo H. Kim, M.D., marked the "Yes" box on form 1102 provided by the Ohio Bureau of Workers' Compensation ("bureau").  Dr. Kim responded to the query:  "Has injury resulted in permanent total disability?"  He then wrote:  "Unable to use arms for any sustained or remunerative activities."

{¶ 11}  4.  On August 6, 2012, relator filed an application for PTD compensation.  In support, relator submitted the August 3, 2012 report of Dr. Kim.

{¶ 12}  5.  On September 25, 2012, relator was examined at the commission's request by John L. Dunne, D.O.  In his four-page narrative report, Dr. Dunne wrote:

> ***Discussion:*** In my opinion, the above allowed conditions have reached maximum medical improvement. Based on my review of the medical records, the history taken today, and the above objective findings per physical examination, it is my opinion that Ms. Corinne Sheller is capable of work activity at a light duty level. Specific limitations would be no work of a repetitive nature at chest height or above and no work of highly repetitive use of anything more than 4 or 5 pounds. An assessment of permanent partial impairment per the *AMA Guides to the Evaluation of Permanent Impairment, Fifth Edition,* finds a range of motion impairment of the right shoulder joint per Figures 16-40, 16-43, and 16-46 is a 14% impairment of the upper extremity which is combined with the strength deficit per Table 16-35 of 25% involving flexion, abduction, and internal rotation of 9% impairment of the upper extremity totaling a 22% impairment of the right upper extremity.
>
> The range of motion loss of the left shoulder is a 7% with normal strength for a 7% impairment of the upper extremity. Table 16-3 assigns a 22% impairment of the upper extremity to be a 13% impairment of the whole person and a 7%

> impairment of the upper extremity to be a 4% impairment of the whole person. Combining the 13% and 4% yields a final whole person impairment of 16% for sprain rotator cuff, right; tear right rotator cuff; impingement syndrome, right; deltoid detachment, right; aggravation of acromioclavicular joint degenerative joint disease; left rotator cuff tear.

{¶ 13} 6. On a Physical Strength Rating form, Dr. Dunne indicated by his mark that relator is capable of "light work." In the space provided under the preprinted query "[f]urther limitations, if indicated," Dr. Dunne wrote: "No work of repetitive nature chest height or above."

{¶ 14} 7. On October 11, 2012, at the commission's request, relator was examined by psychologist David L. Chiarella, Ph.D. In his six-page narrative report, Dr. Chiarella opined:

> The injured worker has sustained an **18%** whole person impairment arising from the allowed psychological conditions.
>
> The injured worker is capable of work with various limitations and modifications. The injured worker is capable of limited and part-time employment activities[.] The injured worker would require breaks from the work activity on a frequent basis. The injured worker would require simple tasks rather than complex or multi-step tasks because of her diminished attention and concentration skills. The injured worker would benefit from work activity that is relatively isolated because of the injured worker's mood disturbance, particularly her irritability and low tolerance for frustration; limited contact with co-workers would increase her ability to be successful.

(Emphasis sic.)

{¶ 15} 8. On October 31, 2012, Dr. Chiarella completed a form captioned "Occupational Activity Assessment[,] Mental & Behavioral Examination." On the form, Dr. Chiarella indicated by his mark: "This Injured Worker is capable of work with the limitation(s) / modification(s) noted below." In the space provided, Dr. Chiarella wrote: "(See Report)."

{¶ 16} 9. The PTD application form asks for information regarding education. The forms asks the applicant: "What is the highest grade of school you completed?" In response, relator wrote: "11 1/2 GED."

{¶ 17} 10. Under the "Education" section of the application form, three queries are posed: (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?" Given a choice of "yes," "no," and "not well," relator selected the "yes" response to all three queries.

{¶ 18} 11. The application form also asks the applicant to provide information regarding work history. In response, relator identified eight jobs that she has held from 1986 to 1996.

{¶ 19} 12. Following a January 29, 2013 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The SHO's order explains:

> This order is based upon the medical reports of Dr. J.L. Dunne, D.O., and Dr. David Chiarella, Ph.D.
>
> Dr. John Dunne, D.O., who examined the Injured Worker on behalf of the Industrial Commission strictly regarding the Injured Worker's orthopedic conditions, indicated that the Injured Worker's condition has reached maximum medical improvement and that the Injured Worker cannot return to her former position of employment, but is capable of performing light work activities which means exerting up to twenty pounds of force occasionally and/or up to ten pounds of force constantly to move objects. He sums his opinion by indicating that the Injured Worker has a 16% permanent partial impairment with respect to the whole person as it relates to the Injured Worker's sole industrial injury from an orthopedic standpoint.
>
> Dr. David Chiarella, Ph.D. who examined the Injured Worker on behalf of the Industrial Commission strictly regarding the Injured Worker's psychiatric conditions only indicated that the Injured Worker's psychiatric conditions have also reached maximum medical improvement and that she cannot return to h[er] former position of employment, but would be able to return to some sustained remunerative employment in a part time work environment and work activity that would be relatively isolated. He further indicates that the Injured Worker has an 18% permanent partial impairment with respect to the whole person as it relates to

the Injured Worker's psychiatric conditions for which the Injured Worker's sole industrial injury is currently recognized.

Therefore, based upon the opinions of Dr. John Dunne and Dr. David Chiarella who combined examined the Injured Worker on all of the allowed conditions for which the Injured Worker's sole industrial injury is recognized, Staff Hearing Officer concludes on a whole that the Injured Worker is medically capable [of] performing some sustained remunerative employment, i.e. light work in a part time isolated work environment. Therefore, the Staff Hearing Officer finds that a discussion of the Injured Worker's non-medical disability factors are now in order.

The Injured Worker is 60 years of age and has an 11th grade education but did obtain her GED. The Injured Worker indicates on her IC-2 Application as well as testimony at hearing, the ability to read, write, and do basic math well. The Injured Worker's work history consists of working early on in her working career as a maintenance worker for two nursing homes for approximately two years performing maintenance work and cashier for a gas station for approximately six months but primarily worked the bulk and later portion of her working career as a wire mill worker/ inspector for three different employers for approximately three years performing such duties as making wires, splicing wires and loading and unloading machines of coil.

Mr. John Ruth performed a vocational evaluation on the Injured Worker on behalf of the Injured Worker. Upon reviewing the Injured Worker's work history, age, and education, he found no work experience which would transfer to light work in a part time isolated work environment. However, upon reviewing the Injured Worker's work history, age, and education, Staff Hearing Officer is not persuaded nor concurs with Mr. Ruth's opinion and finds that the Injured Worker's non-medical disability factors on a whole do not have a negative impact on the Injured Worker's ability to work or be retrained, but rather are to be viewed as somewhat positive factors from a vocational viewpoint.

As indicated before, the Injured Worker is 60 years of age. Said age is an age that is definitely a barrier to re-employment, and concludes that the Injured Worker's age is an unfavorable factor in her re-employment potential.

Staff Hearing Officer finds that the Injured Worker's education is a positive factor. The Injured Worker's high school equivalent education noting that she received her GED and the fact that she has no difficulty in reading, writing or doing basic math is evidence of the Injured Worker's ability to learn new skills conductive to at least sedentary or light work in an entry level position.

Finally, the Staff Hearing Officer finds that the Injured Worker's work history and work experience would be a neutral factor which neither favors nor disfavors re-employability. The Injured Worker's experience has been various unskilled to semi-skilled occupations as a housekeeper, cashier and factory worker in a wire harness facility. The Staff Hearing Officer finds that the Injured Worker's work history has not necessarily provided the Injured Worker with immediate transferable skills to a light and sedentary work environment but the Injured Worker's work history would not necessarily preclude her ability to access other unskilled or semi-skilled work in the economy on a sedentary or light basis noting that she has a high school equivalent education, ability to read, write and do basic math well and noting prior work experience in various settings in a factory workshop setting could provide some experience to perform an occupation in a sedentary or light work environment.

In summary, Staff Hearing Officer concludes that the Injured Worker's non-medical disability factors on a whole favor re-employability that the Injured Worker's positive education factors outweighs the negative age factor and neutral work history factor, and finds that the Injured Worker can at least be retrained to perform some other occupation in a light duty capacity based upon her high school education and limited physical restrictions.

Therefore, based upon the limited physical restrictions indicated by Dr. Dunne and Dr. Chiarella who indicate that the Injured Worker can perform on a whole light work in a part time isolated work environment coupled with the Injured Worker's high school equivalent education finds on a whole that the Injured Worker is not permanently and totally disabled and not precluded from all sustained remunerative employment.

{¶ 20} 13. On March 25, 2013, relator, Corinne Sheller-Chiles, filed this mandamus action.

Conclusions of Law:

{¶ 21} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 22} In its order, the commission, through its SHO, relied upon the reports of Drs. Dunne and Chiarella in determining residual functional capacity. *See* Ohio Adm.Code 4121-3-34(B)(4).

{¶ 23} In his reports, Dr. Dunne opines that the allowed physical conditions of the claim permit light work.

{¶ 24} In his reports, Dr. Chiarella opines that relator "is capable of limited and part-time employment activities." However, Dr. Chiarella does not specify the number of hours per week of part-time employment that relator is capable of working.

{¶ 25} In its order, the commission concluded that relator "is medically capable [of] performing some sustained remunerative employment, i.e. light work in a part time isolated work environment." Then the commission considered the non-medical factors.

{¶ 26} Based upon the case law described below, there is no evidence in the reports of Dr. Chiarella supporting the commission's finding that relator has the ability to perform part-time work that is sustained remunerative employment.

{¶ 27} In *State ex rel. Toth v. Indus. Comm.*, 80 Ohio St.3d 360, 362 (1997), the Supreme Court of Ohio held that "part-time work constitutes sustained remunerative employment." However, the *Toth* court did not hold that any part-time work—no matter how few the hours per week the job might entail—is considered sustained remunerative employment.

{¶ 28} On a case-by-case basis, guidance from this court has developed over time as to what part-time employment may be viewed as sustained remunerative employment.

{¶ 29} Some five years after *Toth,* a magistrate of this court had occasion to succinctly summarize this court's response to *Toth* in *State ex rel. Cale v. Indus. Comm.,* 10th Dist. No. 01AP-1143, 2002-Ohio-2924. In *Cale,* this court, speaking through its magistrate, stated:

Although the Supreme Court has not defined the term "part-time work" in *Toth,* the courts have provided guidance in unreported opinions. In *State ex rel. DeSalvo v. May Co.* (June 29, 1999), Franklin App. No. 98AP-986, unreported (Memorandum Decision), *affirmed* (2000), 88 Ohio St.3d 231, 724 N.E.2d 1147, the court in essence concluded that, where a claimant is capable of working more than four hours per day by combining his abilities to sit, stand and walk, the commission may find the worker capable of sustained remunerative employment.

On the other hand, functional abilities may be so limited that only brief periods of work activities would be possible, which would not constitute sustained remunerative employment. See *State ex rel. Libecap v. Indus Comm.* (Sept. 5, 1996), Franklin App. 96AP-29, *affirmed* (1998), 83 Ohio St.3d 178, 699 N.E.2d 63. In *Libecap,* the commission found the claimant medically capable of sustained remunerative employment at the sedentary level, relying on a medical opinion stating *inter alia* that claimant could sit for no more than thirty minutes at a time. In mandamus, the court of appeals found that the commission abused its discretion in determining that claimant had the medical capacity to perform sedentary work because sedentary work requires sitting most of the time, whereas the commission relied on a medical report finding claimant incapable of sitting more than thirty minutes at one time. Therefore, regardless of the fact that the physician placed claimant generally in the "sedentary" category, the specific limitations imposed were so restrictive as to preclude sustained remunerative employment.

From decisions such as *Toth, DeSalvo,* and *Libecap,* the magistrate extracts general guidelines. It appears that the commission may find a claimant medically unable to perform sustained remunerative work where there are no jobs reasonably likely to accommodate his combination of medical restrictions, and/or where the claimant can work less than four hours per day. However, where the capacities to sit, stand and walk can be combined to provide, for example, a workday of five or six hours, the claimant may be found to be medically capable of sustained remunerative employment.

*Id.* at ¶ 25-27.

{¶ 30} Here, Dr. Chiarella failed to opine the number of hours per week of part-time work that he believes relator can work with her psychological conditions, and the commission relied upon Dr. Chiarella's reports as support for its determination that relator is medically able to perform unspecified part-time work.

{¶ 31} Clearly, the commission failed to rely upon any evidence that would support a determination that the part-time work relator is capable of performing is sufficient to conclude that sustained remunerative employment can be performed. *See State ex rel. DaimlerChrysler Corp. v. Indus. Comm.,* 10th Dist. No. 06AP-387, 2007-Ohio-1498 (the commission did not abuse its discretion in awarding PTD compensation to a claimant who could only work two hours per day).

{¶ 32} Based upon the above analysis, the commission's determination that relator is not permanently and totally disabled is fatally flawed.

{¶ 33} Upon the issuance of a writ, the commission is free to obtain an addendum report from Dr. Chiarella that addresses with specificity the hours per week of part-time work that relator is capable of performing.

{¶ 34} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its order denying relator's PTD application and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates the PTD application.

/S/ MAGISTRATE
KENNETH W. MACKE

NOTICE TO THE PARTIES
Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).