[Cite as *State ex rel. Honda of Am., Mfg., Inc. v. Indus. Comm.*, 2017-Ohio-8972.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Honda of America, Mfg., Inc., | : | |
| Relator, | : | |
| v. | : | No. 16AP-19 |
| Industrial Commission of Ohio, and | : | (REGULAR CALENDAR) |
| Clifford A. Ball, | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on December 12, 2017

**On brief:** *Vorys, Sater, Seymour and Pease LLP,* and *Carl D. Smallwood,* for relator.

**On brief:** *Michael DeWine,* Attorney General, and *Amanda B. Brown,* for respondent Industrial Commission of Ohio.

**On brief:** *Agee, Clymer, Mitchell & Portman,* and *Robert M. Robinson,* for respondent Clifford A. Ball.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BRUNNER, J.

{¶ 1} Relator, Honda of America, Mfg., Inc. ("Honda"), has filed this original action for a writ of mandamus ordering respondent, Industrial Commission of Ohio ("the commission"), to vacate the October 10, 2015 order of its staff hearing officer ("SHO") awarding permanent total disability ("PTD") compensation under Ohio's workers' compensation laws to respondent, Clifford A. Ball, and to enter an order either denying Ball's PTD application or remanding Ball's PTD application to the commission for a new hearing and a decision that corrects certain deficiencies.

{¶ 2}   Pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate.  The magistrate issued the appended decision, including findings of fact and conclusions of law.  The magistrate found that the commission's decision to award PTD benefits to Ball was not supported by some evidence in the record because it was based on a medical opinion that was internally inconsistent.  The medical doctor's five-page narrative indicated the claimant was "permanently and totally disabled from performing sustained remunerative employment" but on the Physical Capacity Evaluation ("PCE") form the doctor indicated a physical capacity retention for part-time work of four to five hours per day.  (Mar. 16, 2016 Stipulation of Evidence at 12.)  The magistrate recommends for this reason that this Court grant a writ of mandamus remanding this matter back to the commission.  Ball filed objections to the magistrate's decision.   Honda and the commission opposed Ball's objections.   The commission agrees that a limited writ should issue for the purpose of "remanding the matter back to the commission, as the trier of fact, to adjudicate Ball's PTD application in a manner consistent with the magistrate's decision." (Mar. 9, 2017 Commission's Memo. In Opp. Objs. To Mag.'s Decision at 2.)

{¶ 3}   After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of Ball's objections, we overrule his objections and adopt the magistrate's findings of fact and conclusions of law as our own.  We thus grant a limited writ of mandamus, remanding the matter back to the commission to adjudicate Ball's PTD application in a manner consistent with the magistrate's decision which we adopt as our own.

## I.  FACTS AND PROCEDURAL BACKGROUND

{¶ 4}   It is undisputed that Ball incurred an injury on August 27, 2001 arising out of his employment with Honda, a self-insured employer.  Ball's industrial claim was allowed.   In 2010, Ball filed an application for PTD compensation ("2010 PTD application"), which the commission granted. Honda challenged that award by filing a mandamus action with this Court, which issued the requested writ ordering the commission to enter a new order adjudicating that application.  On July 13, 2012, the commission denied Ball's 2010 PTD application.

{¶ 5}   The record before us indicates that Ball underwent a Functional Capacity Evaluation ("FCE") at FCE Services, LLC on November 20, 2014.   The evaluator

concluded that Ball demonstrated the ability to perform, at a minimum, work between light and medium physical demand category, with appropriate opportunities throughout the work day to make positional adjustments.

{¶ 6} The record further indicates that, on November 26, 2014, Ball's treating physician at that time, Stephen Altic, D.O., completed a Physician's Report of Work Ability ("Medco-14"), on which he indicated that Ball was not released to his former position of employment but could return to "available and appropriate work with restrictions." (Stipulation of Evidence at 184.) Dr. Altic indicated that Ball potentially could work 8 hours a day, 40 hours a week.

{¶ 7} On December 18, 2014, Ball was examined at his own request by Nancy Renneker, M.D., and a non-treating independent examiner. The same day she examined Ball, Dr. Renneker prepared a report in which she opined that Ball was permanently and totally disabled from performing sustained remunerative employment as a result of his industrial injury. She also completed that day a PCE form on which she indicated that Ball was capable of the following physical actions: (1) stand for two hours, walk for one hour, and sit for two hours, (2) stand one-half hour without interruption, walk one-sixth hour without interruption, and sit one-half hour without interruption, (3) lift five pounds occasionally, (4) use his hands for repetitive simple grasping and fine manipulation, but not pushing and pulling, (5) use his right foot for repetitive movements as in operating foot controls, but not his left foot, (6) "partially bend" "[o]ccasionally" but not squat, crawl, climb stairs, and climb ladders at all, and (7) reach above the shoulder level. (Stipulation of Evidence at 75-76.)

{¶ 8} On January 23, 2015, Ball filed a PTD application. In support, he submitted Dr. Renneker's reports of December 18, 2014.

{¶ 9} In March, April, and July 2016, Ball was examined separately by two physicians and one vocational expert, all of whom opined that Ball was capable of employment with appropriate restrictions and limitations.

{¶ 10} An SHO heard Ball's PTD application on September 24, 2015. On October 10, 2015, the SHO mailed an order awarding Ball PTD compensation commencing December 18, 2014, "based only on the report of Dr. Renneker because it is found that hers was the most complete and reasonable exam on file." (Stipulation of Evidence at 48.)

On December 5, 2015, the three-member commission mailed an order denying Honda's motion for reconsideration of the SHO's order.

{¶ 11} On January 11, 2016, Honda filed this mandamus action alleging four grounds on which the commission abused its discretion in awarding PTD compensation to Ball. Honda argued that there is no competent medical evidence in the record to support the commission's conclusion that Ball "is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed condition(s)." (Jan. 11, 2016 Compl. at ¶ 29.) Second, Honda argued, that the commission relied solely upon Dr. Renneker's report, "which report violated the requirements of the Commission's rules and Medical Examination Manual, was internally inconsistent and, therefore, was defective as a matter of law." *Id.* at ¶ 30. Third, Honda argued that the commission had failed to conduct an analysis of the non-medical "Stephenson" factors, where the medical evidence uniformly demonstrated that Ball was capable of sustained remunerative employment." *Id.* at ¶ 31. Fourth and finally, Honda argued that the commission awarded PTD compensation despite the undisputed medical evidence that Ball was capable of vocational rehabilitation and the undisputed fact that Ball had failed to participate in the vocational training Honda offered.

{¶ 12} On April 19, 2016, the commission filed its brief, requesting that this Court issue a limited writ remanding this matter back to the commission. The commission in its brief explained why it agreed mandamus was appropriate, at least to a limited extent:

> The commission order at issue relies on the report of Dr. Renneker in granting PTD benefits, but Dr. Renneker's report does not indicate that the doctor reviewed any of Ball's existing medical records in the fifteen months prior to the application, as required by law. Accordingly, the commission concedes that a limited writ is necessary and appropriate in this matter to allow the commission to properly adjudicate this issue.

(Apr. 19, 2016 Commission's Brief at 1.)

{¶ 13} The magistrate's decision centered on the issue of whether Dr. Renneker's report, on which the SHO stated exclusive reliance, provided some evidence to support the commission's PTD award. The magistrate concluded and the commission conceded that Dr. Renneker's report was internally inconsistent, as one section of the report

indicated that Ball is permanently and totally disabled from performing any sustained remunerative employment, and a form submitted with the report indicated that Ball retains the physical capacity for part-time work of four to five hours a day. The magistrate thus determined that Dr. Renneker's report does not constitute some evidence on which the commission could have relied in support of its PTD award. The magistrate recommends that this Court issue a limited writ of mandamus "ordering the commission to vacate its SHO's order of September 24, 2015 awarding PTD compensation, and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates the PTD application." (App'x at ¶ 73.) Relator, Honda, prays in its complaint for "a writ of mandamus voiding and vacating the October 10, 2015 order awarding permanent total disability compensation" to Ball, "and either ordering the Commission to enter a new order denying Ball's 2015 PTD application or remanding Ball's 2015 PTD application to the Commission for a new hearing and a decision which corrects the deficiencies described herein. (Compl. at 14-15.)

## II. OBJECTIONS TO MAGISTRATE'S DECISION

{¶ 14} Ball's filing does not enumerate specific objections, although it contains a single bulleted heading that states, "Dr. Renneker's report is not so internally inconsistent that it does not constitute 'some evidence.' " (Feb. 9, 2017 Ball's Objs. to Mag.'s Decision at 2.) Ball objects generally to the magistrate's findings of facts and conclusions of law regarding Dr. Renneker's report. Ball asserts that the magistrate erred in concluding "that a partial review of a pre-printed 'check the box' form should take precedence over a thorough evaluation that concluded [Ball] was permanently and totally disabled from all forms of remunerative employment." *Id.* at 4.

{¶ 15} Ball contends the magistrate accepted "Honda's invitation to substitute this Honorable Court's judgment over that of the [commission]," arguing that the commission had accepted Dr. Renneker's findings and had awarded him PTD benefits based on Dr. Renneker's report. *Id.* Ball submits the following argument in support of his contention:

> The [commission] is the body in the state of Ohio that is charged with determining whether or not a claimant is permanently and totally disabled. Understandably, the employer does not like the result, however, no legal justification exists for this Court substituting its judgment

over that of the [commission]. Some evidence exists to support the contention that [Ball] is permanently and totally disabled and, therefore, the Order from the [commission] should stand.

*Id.* at 4-5.

### III.  LAW AND DISCUSSION

{¶ 16} To be entitled to relief in mandamus, Honda must establish that it has a clear legal right to relief, and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967), paragraph nine of the syllabus.  To do so, Honda must demonstrate that the commission abused its discretion and, "in this context, abuse of discretion has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it." *State ex rel. Burley v. Coil Packaging, Inc.*, 31 Ohio St.3d 18, 20 (1987).  Where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is not appropriate.  *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987).  To prove its entitlement to a writ of mandamus, Honda must show that the commission's decision is not supported by some evidence in the record.  *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986).  But questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as the factfinder.  *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 17} The magistrate's decision includes a comprehensive discussion of the statutory and case law on the standard for determining what part-time employment may be viewed as sustained remunerative employment.  The magistrate correctly stated that case law establishes that a work capacity of "four or more hours per day" constitutes sustained remunerative employment.  *State ex rel. Toth v. Indus. Comm.*, 80 Ohio St.3d 360 (1997); *State ex rel. Sheller-Chiles v. Indus. Comm.*, 10th Dist. No. 13AP-245, 2014-Ohio-313, ¶ 5.

{¶ 18} The magistrate observed that the portion of Dr. Renneker's report constituting a narrative disability opinion indicates Ball is unable to perform sustained remunerative employment, but this is inconsistent with the PCE form she completed as part of her report:

> Both documents relate to the same medical examination performed on December 18, 2014 yet two very different opinions of [Ball's] disability emerge. While the "Physical Capacity Evaluation" indicates that [Ball] can perform part-time "in a work situation," the narrative report indicates that [Ball] cannot perform sustained remunerative employment.

(App'x at ¶ 67.)

{¶ 19} The magistrate's decision contains a thorough and accurate review of the case law establishing that a doctor's report can be so internally inconsistent that it cannot be some evidence on which the commission can rely. *State ex rel. Taylor v. Indus. Comm.*, 71 Ohio St.3d 582 (1995); *State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445 (1994). In his decision, the magistrate discusses the Supreme Court of Ohio's holding in *State ex rel. M. Weingold & Co. v. Indus. Comm.*, 97 Ohio St.3d 44, 2002-Ohio-5353, in which substantial inconsistencies between two C-84s generated by the same examination do not constitute some evidence on which the commission may rely. Additionally, this Court has applied *Weingold* to eliminate from evidentiary consideration a physician's C-84 that was inconsistent with the physician's examination notes. *State ex rel. Genuine Parts Co. v. Indus. Comm.*, 160 Ohio App.3d 99, 2005-Ohio-1447 (10th Dist.). Accordingly, the magistrate based his legal conclusions on such case law and found that Dr. Renneker's report does not provide the commission with some evidence to support the PTD award.

{¶ 20} As noted, the commission concedes consistent with the magistrate's decision that its order was issued contrary to law, not constituting the necessary "some evidence" to avoid an abuse of discretion. And the commission acknowledges that Dr. Renneker did not consider in her report any of Ball's medical treatment or testing in the 15 months before her independent medical examination of him, and thus the commission's decision to award PTD is not supported with medical evidence as required by Ohio Adm.Code 4121-3-34(D)(3)(d). The commission submits that Ball, through his objections, is asking this Court to act as the trier of fact and reweigh the evidence, contrary to the holdings of *Teece* and *State ex rel. Honda of Am. Mfg., Inc. v. Indus. Comm.*, 10th Dist. No. 14AP-82, 2014-Ohio-5245, ¶ 10. The commission encourages this Court to overrule Ball's objections and to grant a limited writ of mandamus, remanding

the matter back to the commission, as the trier of fact, to adjudicate Ball's PTD application in a manner consistent with the magistrate's decision.

{¶ 21} Ball, in both his brief and his objections to the magistrate's decision, does not address the commission's concession that its order awarding him PTD compensation was granted contrary to law.

{¶ 22} We agree with the magistrate's decision. The inconsistencies between the narrative report and the PCE form which Dr. Renneker prepared on December 18, 2014 following her examination of Ball, cannot be reconciled. Consequently, we find that Dr. Renneker's report, specified by the SHO to be the only evidence upon which the PTD eligibility determination is based, does not constitute some evidence to support the commission's decision that Ball could not participate in sustained remunerative employment and is permanently and totally disabled.

## IV. CONCLUSION

{¶ 23} Having reviewed the magistrate's decision, conducted an independent review of the record, and given due consideration to Ball's objections, we hold that the magistrate has appropriately made its findings of fact and conclusions of law in finding that Honda is entitled to relief in mandamus. Therefore, we overrule Ball's objections to the magistrate's decision and adopt the decision as our own, including the findings of facts and conclusions of law therein. We grant a limited writ of mandamus, ordering the commission to vacate its decision of December 9, 2015 denying reconsideration of the SHO's order of September 24, 2015, awarding PTD compensation, and in a manner consistent with this decision, hold a new hearing and thereafter enter a new order that adjudicates Ball's PTD application having corrected the deficiencies described herein.

*Objections overruled;*
*writ of mandamus granted.*

BROWN and KLATT, JJ., concur.

————————

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Honda of America, Mfg., Inc., | : | |
| Relator, | : | |
| v. | : | No. 16AP-19 |
| Industrial Commission of Ohio, and | : | (REGULAR CALENDAR) |
| Clifford A. Ball, | : | |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on January 26, 2017

*Vorys, Sater, Seymour and Pease LLP,* and *Carl D. Smallwood,* for relator.

*Michael DeWine,* Attorney General, and *Amanda B. Brown,* for respondent Industrial Commission of Ohio.

*Agee, Clymer, Mitchell & Portman,* and *Robert M. Robinson,* for respondent Clifford A. Ball.

IN MANDAMUS

{¶ 24} In this original action, relator, Honda of America, Mfg., Inc. ("Honda" or "relator"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the September 24, 2015 order of its staff hearing officer ("SHO") that awards permanent total disability ("PTD") compensation to respondent Clifford A. Ball ("claimant"), and to enter an order denying the compensation.

Findings of Fact:

{¶ 25} 1. On August 27, 2001, claimant injured his lower back while employed as an "Assembly Worker" for relator, a self-insured employer under Ohio's workers' compensation laws.

{¶ 26} 2. The industrial claim (No. 01-854453) is allowed for:  "lumbosacral sprain/strain; sciatic neuritis; herniated nucleus pulposus L3-4 & L4-5; aggravation of pre-existing lumbar degenerative joint disease; lumbar stenosis at L4-5."

{¶ 27} 3. Claimant has undergone four surgeries.  In December 2001, claimant underwent a lumbar laminectomy.  In April 2009, claimant underwent a second surgery described as:

> L4 completion laminectomy, L4-L5 bilateral facetectomy, L5 laminectomy, pedicle screw fixation L4-5, transverse process fusion L4-5, interbody fusion L4-5, interbody fusion device L4-L5, removal of instrumentation L3-4, exploration of fusion L3-4, use of NIMS monitoring system use of o-arm CT-guided Stealth for screw placement.

{¶ 28} In August 2012, claimant underwent a third surgery described as "[p]ercutaneous placement of two lumbar spinal cord stimulator leads for trial screening purposes."

{¶ 29} In April 2013, claimant underwent a fourth surgery which was a permanent placement of the spinal cord stimulator.

{¶ 30} 4. On December 5, 2013, claimant was examined by treating physician Stephen Altic, D.O.  On December 9, 2013, Dr. Altic wrote:

> Clifford was seen in our office on 12/05/13 for evaluation of the industrial claim mentioned above. His BWC history was reviewed. No interim injuries. He complains of continued lumbar pain with occasional radiation and paresthesias down the left lower extremity to the left foot. He has overall improvement in his radiating lower extremity pain with a recent spinal cord stimulator implantation; however, his lumbar axial pain continues to worsen. He sees Dr. Orzo for pain management. They are currently working on doing adjustments through Medtronic to the recent spinal cord stimulator implant in order to capture the axial pain. In the meantime, he uses Percocet, cyclobenzaprine and a Duragesic patch with positive benefit.

Review of systems and past medical and surgical history was reviewed and documented today. His history includes a spinal cord stimulator implant by Dr. Dixon recently and previous lumbar fusion L3 to L5.

* * *

In my medical opinion, present complaints and physical exam findings, along with the allowed conditions are directly and proximately related to the patient's injuries sustained at work on 08/27/2001. I have encouraged the patient to continue a home exercise program as tolerated. He will follow up with Dr. Orzo for pain management and spinal cord stimulator adjustments. We will have him return to our office in two months for recheck and reevaluation.

{¶ 31} 5. On December 17, 2013, claimant presented to his pain care specialist Michael Orzo, M.D. In that regard, Dr. Orzo wrote:

SUBJECTIVE NOTES:

Mr. Ball is a 56 year old male. He presents today for a follow up visit. He was referred to us by Dr. May. At today's visit, his primary complaint is low back into left leg pain. Mr. Ball states the medication prescribed provides relief of his pain. No side effects are reported.

His pain level is increased lately due to increased activity. He uses his stimulator all the time with some benefit and good coverage in his leg, hips and buttocks. He will get reprogrammed on his next visit. 12/17/13

SUBJECTIVE:

Mr. Ball indicated on his visit today that there has been a slight improvement in his low back pain. He related that there has ben a modest amount of improvement in the leg cramps. Mr. Ball remarked that the numbness in the area of the leg is slightly improved. He also stated today that he is experiencing a slight decrease of numbness and discomfort in his left foot. Mr. Ball was requested to evaluate his perception of the current status of his condition. On a pain scale of 1 to 10, he reports his low back pain at 6 and leg cramps at 6 and leg numbness at 6 and left foot numbness at 6.

{¶ 32} 6. On November 6, 2014, claimant visited Dr. Altic for another follow-up. In his office note of that date, Dr. Altic wrote:

> So, he had some logistical problems, but I think still that he would benefit from voc rehab reevaluation, and we ought to get an FCE at this point.
>
> * * *
>
> Plan: Based upon today's visit, I am requesting the following via C-9:
>
> [One] Functional capacity evaluation with Mr. Scott Secrest.
>
> [Two] Vocational rehab evaluation with Work Ready.

{¶ 33} 7. On November 20, 2014, claimant underwent a Functional Capacity Evaluation ("FCE") that was conducted by Mr. Scott Secrest.  In his three-page narrative report, Secrest wrote:

> Mr. Ball was referred by Stephen Altic, DO to FCE Services, LLC for a Functional Capacity Evaluation. The purpose of the functional capacity evaluation was to determine his safe physical abilities and feasibility for vocational rehabilitation.
>
> * * *
>
> Conclusions and recommendations are based on a combined analysis of the client's performance, clinical observations of their movement patterns, findings from the clinical exam, and clinical reasoning.
>
> Mr. Ball's presentation is typical of his injury and diagnoses. He demonstrates relatively competitive ability with certain tasks in isolation. However, he has increasing symptoms and diminishing functional tolerance with repetitive and/or cumulative tasks. When all factors are considered, Mr. Ball demonstrates safe work ability between the light and the medium physical demand category. At a minimum, he demonstrates the ability to complete all material handling tasks with 30 lb occasionally and 20 lb frequently.
>
> However, it is important to note that he would be unable to tolerate sustained postures in sitting or standing throughout the work day. Thus, he will require regularly scheduled or at least evenly scattered opportunities throughout the work day

to make postural/positional adjustments. No single position should be required for more than a frequent range (66% of 8-hour day), thus allowing for occasional (33% of 8-hour day) to break from that position. Accordingly, I do not believe he could perform any material handling task within a constant range.

{¶ 34} 8. On November 26, 2014, Dr. Altic completed a form provided by the Ohio Bureau of Workers' Compensation ("bureau") captioned "Physician's Report of Work Ability," which the bureau designates as a Medco-14. On the Medco-14, Dr. Altic indicated by his mark that claimant is not released to his former position of employment but he may return to "available and appropriate work with restrictions."

{¶ 35} Section 3 of the Medco-14 form is captioned "Injured Worker's Capabilities * * *." Section 3 poses a query to the treating physician. "How many total hours is this injured worker potentially able to work?" In response, Dr. Altic wrote "8" aside "Hours in a day." He wrote "40" aside "Hours in a week."

{¶ 36} 8. On December 18, 2014, at claimant's request, he was examined by Nancy Renneker, M.D. In her five-page narrative report, under "History," Dr. Renneker lists 21 medical documents that she reviewed in preparation for her report. Chronologically, the list begins with a description of a September 12, 2001 lumbar spine MRI scan and ends with a description of a September 5, 2013 follow-up office note from Dr. Altic.

The concluding paragraph under "History" states:

As stated above, Clifford Ball last worked on his job as a production associate at Honda of America Manufacturing, Inc. in January of 2006 and Clifford Ball is currently on Social Security Disability. Clifford Ball currently sees Dr. Stephen Altic, D.O. every two to three months and Pain Management Specialist, Dr. Orzo on an every two month basis for this injury/claim.

Under "Present Complaints," Dr. Renneker states:

Clifford Ball complains of constant "24/7" bilateral low back pain with Clifford Ball reporting that on his current medications and with the use of his spinal cord stimulator "24/7" in his low back pain is at best a 4 and at worse a 10 on a visual analog scale of 0 to 10 with 0 being "no pain" and 10 being "the worse pain of one's life". Clifford Ball also complains of constant low back stiffness, increased pain and stiffness about low back in cold or damp weather. Clifford

Ball denies any radiation of pain, paresthesia, dysesthesia, or numbness in his right leg. Clifford Ball complains of constant "24/7" numbness/paresthesia/dysesthesia down left lateral leg extending into left foot and Clifford Ball reports that his entire left foot including all toes are "always numb/tingling or burning" with pain. Clifford Ball also notes weakness about his left lower leg. Clifford Ball is continent of bowel and bladder. Clifford Ball is able to sit or stand for a maximum interval of 30 minutes, able to walk for at most a 10 minute interval on a level surface, and Clifford Ball reports that after 10 minutes he will have excruciating left leg pain, cramping throughout left calf and foot, and burning left leg pain. Clifford ball is independent in dressing and at the time of this evaluation, Clifford Ball slips in and out of loosely tied shoes as though they were loafers. Clifford Ball avoids all stair climbing with Clifford Ball reporting that he lives on the first level of his mother's house as he is unable to climb stairs. Clifford Ball reports that the most that he lifts and carries is a gallon of milk from the refrigerator to the dining room table and Clifford Ball reports that his mother, who also lives with his [sic], does the grocery shopping and carries in the groceries. Clifford Ball reports that he is unable to do the yard work involved with the upkeep of a home or is he able [sic] to vacuum, scrub the tub, and Clifford Ball reports that he has the least amount of low back and leg pain when lying down. Clifford Ball spends the majority of his day lying on a couch or in his bed to decrease his low back and left leg symptoms. Clifford Ball reports that the longest interval that he is away from his home is to attend a doctor's appointment and Clifford Ball reports that on returning to home that he will spend the rest of his day in bed or lying on the couch. Clifford Ball reports that he makes simple meals i.e. a sandwich or microwaves a meal with Clifford Ball reporting that he notes severe low back and left leg pain if standing at a kitchen counter or sink to do dishes or to prepare food.

Under "Social History," Dr. Renneker states:

Clifford Ball is a high school graduate and Clifford Ball reports that he has always had heavy lifting/labored jobs/assembly line jobs such as his job as a production associate at Honda. Clifford Ball states that he lives with his brother in his mother's home with Clifford Ball reporting that up until six months ago he lived with his mother and his brother in his mother's home with Clifford Ball reporting that his mother recently died. Clifford Ball, as stated above,

avoids stair climbing and Clifford Ball lives on the first level of his mother's home.

{¶ 37} Under "Examination," Dr. Renneker details her findings during the examination. However, that portion of the report will not be repeated here.

Under "Opinion," Dr. Renneker states:

Based on medical records reviewed, my exam of this date, and in my medical opinion, Clifford Ball, who is status post L3-4 posterior lateral fusion on 12-17-2001 and status post L4-S posterior lateral fusion on 4-10-2009 with ongoing intractable low back and left leg pain/dysesthesia requiring around the clock use of a spinal cord stimulator and narcotic medication/ a Fentanyl Patch and four times a day Percocet with exam findings consistent with on going left L4, L5, and left S1 radiculopathy has the following permanent job restrictions related to his back injury of 8-27-2001: (1) no floor to waist bending, no kneeling, squatting, crawling, climbing of ladders or stairs on job (2) able to sit or stand for a maximum interval of 30 minutes, able to walk on a level surface for a maximum interval of 10 minutes on an occasional basis only and Clifford Ball is unable to walk on uneven terrain and unable to walk or [sic] erratic surfaces (3) able to occasionally lift from knee height to shoulder height an object weighing up to 7 lbs. and Clifford Ball is able to carry this 7 lb. object a distance of no more than 10 to 15 yards on a level surface and on an occasional basis only (4) no use of left ankle and foot to operate foot controls and (5) on his current medications and with use of his spinal cord stimulator, Clifford Ball is unable to operate motorized equipment in the work place. Clifford Ball is unable to lift at a sedentary work load. In summary, it is my medical opinion that Clifford Ball is permanently and totally disabled from performing sustained remunerative employment due to his residual physical impairments related to his work injury of 8-27-2001 (Claim no. 01-854453).

{¶ 38} 9. On December 18, 2014, Dr. Renneker completed a form captioned "Physical Capacity Evaluation." Apparently, this form was provided to Dr. Renneker by claimant's counsel. There is no indication on the form that it was produced by the bureau or the commission. The form provides the following instructions:

Please answer the questions and give the limitations that you believe are imposed upon the above referenced claimant. Keep in mind that we are asking you to assume in answering

these questions with regard to limitations; that this is a work setting where a person would be required to work eight hours a day, day after day, on a sustained and regular basis. If in your opinion there is a medical basis for this claimant's pain, please factor that in this claimant's ability to do the following items.

{¶ 39} Following the instructions, the form presents 11 enumerated queries. The first three of the queries are as follows:

[One] In an 8 hour day and in a work situation, how many can the claimant stand?

* * *

[Two] In an 8 hour day and in a work situation how many can the claimant walk?

* * *

[Three] In an 8 hour day and in a work situation, how many can the claimant sit?

{¶ 40} Underneath each of the first three queries quoted above, the form invites the physician to indicate by his or her mark the number of hours the claimant can stand, walk, and sit.

{¶ 41} By her mark, Dr. Renneker indicated that claimant can stand for two hours, walk for one hour, and sit for two hours.

{¶ 42} The fourth query on the form asks the physician "How many hours can the claimant stand, walk and sit at one time without interruption?" In response, Dr. Renneker indicated by her mark that claimant can stand 1/2 hour without interruption, he can walk 1/6 hour without interruption, and he can sit 1/2 hour without interruption.

{¶ 43} The fifth query asks the physician to indicate how many pounds claimant can lift. Given a choice of "None," "5 lbs," "10 lbs," "11-20 lbs," "21-50 lbs," and "over 51 lbs," Dr. Renneker selected "5 lbs."

{¶ 44} The sixth query on the form asks "Lifting as indicated above can be performed during the work day." Given a choice of "None," "Occasionally," "Frequently," and "Continuously," Dr. Renneker selected "Occasionally."

{¶ 45} In response to the seventh query on the form, Dr. Renneker indicated by her mark that claimant can use his hands for repetitive "Simple Grasping" and "Fine Manipulation," but claimant cannot do pushing and pulling.

{¶ 46} In response to the eighth query on the form, Dr. Renneker indicated that claimant can use his right foot for repetitive movements as in operating foot controls, but he cannot so use his left foot.

{¶ 47} In response to the ninth query, Dr. Renneker indicated by her mark that claimant can "partially bend" "[o]ccasionally" but he cannot squat, crawl, climb stairs, and climb ladders at all.

{¶ 48} In response to the tenth query, Dr. Renneker indicated that claimant "is able to reach above the shoulder level."

{¶ 49} The eleventh query asks "Is the claimant's condition likely to deteriorate if placed under stress, particularly stress associated with the job?" In response, Dr. Renneker marked the "yes" space.

{¶ 50} 10. On January 23, 2015, claimant filed an application for PTD compensation. In support, claimant submitted the reports of Dr. Renneker.

{¶ 51} 11. On March 9, 2015, at Honda's request, claimant was examined by Kenneth A. Mankowski, D.O., who is board certified in neurology and psychiatry. In his five-page narrative report dated March 27, 2015, Dr. Mankowski opined:

> In my opinion, Mr. Ball does have the ability to engage in sustained remunerative employment considering the impairments resulting from the allowed conditions of this claim. I acknowledge Dr. Renneker's physical examination findings and opinions outlined in her note dated December 18, 2014. However, the neurological deficits that she described were not present during my examination on March 27, 2015. I performed a comprehensive general and neurological examination and did not identify any significant fixed neurological deficits.
>
> In my opinion, Mr. Ball does have some physical restrictions and limitations as related to the allowed conditions of this claim. These include: not lifting greater than 10 pounds, standing/walking a maximum of three hours per day, crouching/stooping or bending up to one third of the workday, [a] total maximum of five hours per day in the seated position and a maximum of two hours of consecutive

time in a seated position. These restrictions and limitations can be best described as a light duty capacity of work ability. Dr. Johnson describes appropriate vocational options in his report dated September 6, 2010. It is important to remember, Mr. Ball does not have any significant fixed neurological deficits and/or instabilities of the spine. The work related restrictions and limitations result from his continued chronic pain and reduced range of motion of the musculoskeletal system. Remaining or reentering into the workforce with proper restrictions and limitations will have a neutral or more likely than not a beneficial effect on these issues.

{¶ 52} 12. On April 28, 2015, at the commission's request, claimant was examined by Ronald J. Bloomfield, M.D. In his three-page narrative report, Dr. Bloomfield opined:

I have completed the enclosed physical strength rating. I feel he is capable of sedentary work with no left foot controls. I believe he can push and pull 10 pounds on an occasional basis and negligible weights on a frequent basis. There would be no restrictions regarding use of the upper extremities. He would not be allowed to crawl, go to heights, or kneel in the workplace. He can perform a wide range of sedentary work with no restrictions regarding the upper extremities but no left foot controls.

{¶ 53} 13. On April 30, 2015, Dr. Bloomfield completed a form captioned "Physical Strength Rating." On the form, Dr. Bloomfield indicated by his mark that claimant is capable of "sedentary work." The form asks for "[f]urther limitations, if indicated." Thereunder, in the space provided, Dr. Bloomfield wrote "No left foot controls; no upper ext[remity] restrictions."

{¶ 54} 14. At Honda's request, vocational expert Craig Johnston, Ph.D., prepared a report captioned "Employability Assessment," dated July 16, 2015. In his five-page narrative report, Dr. Johnston opined that claimant is employable. In his report, Dr. Johnston analyzed the vocational factors:

a. **Age:** Mr. Ball is 58 years of age, defined by the Industrial Commission as a "Person of Middle Age". He would have approximately 7 remaining years of standard worklife expectancy, assuming a retirement age of 65. His age is a potential barrier to employment, but is not alone work prohibitive. He last worked in 2006, when he was 48 years of age.

b. **Education:** The claimant graduated from high school and completed one "trimester" at DeVry in Electronics in 1987. His education is defined as a "High School Education and Above", and is consistent with the ability to engage in skilled work activity. The claimant states that he can read, write, and do basic math. His age is an asset to securing future employment.

c. **Work History:** Mr. Ball has demonstrated the ability to work in positions requiring average aptitudes of intelligence, spatial perception, clerical perception, and manual dexterity. He has demonstrated 7-8th grade reasoning and language proficiencies and a 4-6th grade mathematics proficiency. He has demonstrated temperaments for occupations requiring that he perform repetitive duties, attain precise tolerances, and work under specific instructions. Specific skills have been developed in the Work Fields of structural fabrication, electrical fabrication, mechanical fabrication, winding, baking-drying, accommodating, and cleaning; and in the MPSMS of meal services, dairy products, paper and allied products, and motor vehicles. His work history provides the fundamental skills for entry-level work. Additional work, not included on his PTD application, include plant manager and foreman, occupations that if performed consistent with the DOT, would provide a significant additional skills and work competencies.

{¶ 55} 15. Following a September 24, 2015 hearing, an SHO mailed an order on October 10, 2015 awarding PTD compensation starting December 18, 2014 based on the report of Nancy Renneker, M.D. The SHO's order explains:

Based upon the report(s) of Dr(s). Nancy Renneker, M.D., dated 12/18/2014, it is found that the Injured Worker is unable to perform any sustained remunerative employment solely as a result of the medical impairment caused by the allowed conditions(s). Therefore, pursuant to *State ex rel. Speelman v. Indus. Comm.* (1992), 73 Ohio App.3d 757, it is not necessary to discuss or analyze the Injured Worker's non-medical factors.

The order is based only on the report of Dr. Renneker because it is found that hers was the most complete and reasonable exam on file. The Injured Worker has had four surgeries, uses a spinal cord stimulator constantly, uses the narcotic medication fentanyl patch, takes Percocet four times per day, is only able to sit or stand a maximum of 30 minutes

at a time, can only walk for 10 minutes at a time and only if there is a level surface, can only lift a 7 pound object occasionally, cannot operate left ankle and foot controls.

{¶ 56} 16. On December 5, 2015, the three-member commission mailed an order denying relator's motion for reconsideration of the SHO's order of September 24, 2015.

{¶ 57} 17. On January 11, 2016, relator, Honda of America, Mfg., Inc., filed this mandamus action.

Conclusions of Law:

{¶ 58} The main issue is whether the report of Dr. Renneker on which the commission exclusively relied, provides some evidence to support the commission's PTD award.

{¶ 59} Finding that the report of Dr. Renneker does not provide some evidence to support the PTD award, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 60} In *State ex rel. Toth v. Indus. Comm.*, 80 Ohio St.3d 360, 362 (1997), the Supreme Court of Ohio held that "part-time work constitutes sustained remunerative employment." *Id.* at 362. However, the *Toth* court did not hold that any part-time work—no matter how few the hours per week the job might entail—is considered sustained remunerative employment.

{¶ 61} On a case-by-case basis, guidance from this court has developed over time as to what part-time employment may be viewed as sustained remunerative employment.

{¶ 62} Recently, in *State ex rel. Sheller-Chiles v. Indus. Comm.,* 10th Dist. No. 13AP-245, 2014-Ohio-313, ¶ 5, this court had occasion to review the case law establishing the standard for determining what part-time work capacity constitutes sustained remunerative employment. This court held that a work capacity of "four or more hours per day" constitutes sustained remunerative employment. *Id.* See *State ex rel. Bonnlander v. Hamon,* 10th Dist. No. 14AP-855, 2015-Ohio-4038. (Providing a succinct discussion of *Toth* and *Sheller-Chiles.*)

{¶ 63} The "Physical Capacity Evaluation" form completed by Dr. Renneker on December 18, 2014 shows that claimant retains the physical capacity for part-time work of four to five hours per day. That is, as indicated by the marking of the form by Dr. Renneker, "in a work situation" claimant can stand for two hours in an eight hour day, he

can sit for two hours in an eight hour day, and he can walk for one hour in an eight hour day.

{¶ 64} Moreover, Dr. Renneker indicated on the form that claimant can stand without interruption for 30 minutes, he can sit without interruption for 30 minutes, and he can walk without interruption for 10 minutes.

{¶ 65} It can further be observed that Dr. Renneker's indication on the form that claimant can lift five pounds occasionally but cannot lift ten pounds does not preclude sedentary work under Ohio Adm.Code 4121-3-34(B)(2)(a). *State ex rel. Petermann LLC v. Ragle,* 10th Dist. No. 11AP-556, 2012-Ohio-5659.

{¶ 66} By contrast, in her five-page narrative report, Dr. Renneker opines that claimant "is permanently and totally disabled from performing sustained remunerative employment due to his residual physical impairments related to his work injury."

{¶ 67} Dr. Renneker's disability opinion in her narrative report is inconsistent with her completion of the "Physical Capacity Evaluation" form. Both documents relate to the same medical examination performed on December 18, 2014 yet two very different opinions of relator's disability emerge. While the "Physical Capacity Evaluation" indicates that claimant can perform part-time "in a work situation," the narrative report indicates that claimant cannot perform sustained remunerative employment.

{¶ 68} It has been held that a doctor's report can be so internally inconsistent that it cannot be some evidence upon which the commission can rely. *State ex rel. Lopez v. Indus. Comm.,* 69 Ohio St.3d 445 (1994); *State ex rel. Taylor v. Indus. Comm.,* 71 Ohio St.3d 582 (1995). By extension, substantial inconsistencies between two C-84s generated by the same examination compel the same result. *State ex rel. M. Weingold & Co. v. Indus. Comm.,* 97 Ohio St.3d 44, 2002-Ohio-5353.

{¶ 69} The *Weingold* rationale was applied by this court to eliminate from evidentiary consideration a physician's C-84 that was inconsistent with the physician's examination notes. *State ex rel. Genuine Parts Co. v. Indus. Comm.,* 160 Ohio App.3d 99, 2005-Ohio-1447 (10th Dist.).

{¶ 70} In *Genuine Parts,* the commission had relied upon a C-84 from Dr. Snell to support and award of TTD compensation. Holding that Dr. Snell's report is not some evidence upon which the commission can rely, this court explained:

Contrary to the respondent's contention, Dr. Snell's C-84 is not some evidence upon which the commission could rely because the C-84 is inconsistent with Dr. Snell's examination notes. Recognizing this inconsistency does not require the weighing of evidence as respondent argues. We give no greater weight to either the C-84 or the examination notes. We simply find, as did the magistrate, that they relate to the same examination and that they are inconsistent. The fact that the inconsistency arises from statements contained in two different documents rather than in one report is not significant. Again, it is clear that both documents were prepared by Dr. Snell and relate to the same physical examinations. As the magistrate notes, the same rationale was applied in *State ex rel. M. Weingold & Co. v. Indus. Comm.,* 97 Ohio St.3d 44, 2002 Ohio 5353, 776 N.E.2d 69, which involved substantial inconsistencies between two C-84's arising from the same examination.

*Id.* at ¶ 4.

{¶ 71} Based on the above-described case law, the magistrate concludes that Dr. Renneker's report does not provide the commission with some evidence to support the PTD award.

{¶ 72} On remand of this cause to the commission for further proceedings, Dr. Renneker's reports must be eliminated from evidentiary consideration.

{¶ 73} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of September 24, 2015 awarding PTD compensation, and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates the PTD application.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).